# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-60464

ERIKA JISELA YANEZ-PENA, also known as Erika Jisela Pena-Yanez,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2020

Lyle W. Cayce
Clerk

Petition for Review of Order of the
Board of Immigration Appeals

Before WIENER, GRAVES, and WILLETT, Circuit Judges.

WIENER, Circuit Judge:

Petitioner Erika Jisela Yanez-Pena seeks review of an order of the Board of Immigration Appeals ("BIA") denying her motion to reopen her removal proceedings. Yanez-Pena maintains that, in light of the Supreme Court's holding in *Pereira v. Sessions*,[1] a notice to appear ("NTA") is defective if it does not include the time and place of the initial hearing. She argues that the NTA she received was defective because it omitted the time and place of her initial removal hearing. Yanez-Pena further asserts that, because the NTA she received was defective, she is eligible for cancellation of removal or,

---

[1] 138 S. Ct. 2105 (2018).

No. 19-60464

alternatively, that the order removing her in absentia is invalid. We hold that (1) the information statutorily required to be contained in an NTA may be supplied in more than one document, and (2) an NTA is perfected, and the stop-time rule is triggered, when the alien receives all required information, whether in one document or more.

## I.

After being served with a deficient NTA, Yanez-Pena was subsequently mailed a "notice of hearing" that set forth the time and place of her initial removal hearing. This document (1) perfected her initial NTA by providing proper notice of her removal hearing and (2) terminated her "continued presence" in the United States pursuant to the stop-time rule, precluding Yanez-Pena's eligibility for cancellation of removal.[2] The BIA therefore did not abuse its discretion by failing to reopen Yanez-Pena's removal proceedings to allow her to seek cancellation of removal or to rescind the in absentia order of removal.

## II.

Yanez-Pena is a native and citizen of Honduras who entered the United States on or about August 29, 2007 without inspection and admission by an immigration officer. On August 31, 2007, the Government initiated removal proceedings against Yanez-Pena by serving her personally with an NTA. The NTA ordered Yanez-Pena to appear at a removal hearing before an Immigration Judge at the address provided in the NTA at a time and date "to be set." The NTA reflects that, at the time of service, Yanez-Pena was orally advised in Spanish of the consequences of failing to appear at her hearing.

---

[2] The stop-time rule serves to end an alien's "continued presence" in the United States, *see* 8 U.S.C. § 1229b(d)(1)(A), which is required to seek cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1)(A). This rule is discussed in depth below.

2

No. 19-60464

On September 10, 2007, the immigration court mailed a notice of hearing to the address provided by Yanez-Pena, specifying that her first hearing would take place at 9:30 a.m. on September 18, 2007. The immigration court mailed two successive notices, both of which rescheduled the time and date of the hearing. The final hearing notice, mailed November 19, 2007, informed Yanez-Pena that her initial removal hearing would take place at 9:00 a.m. on January 28, 2008. Yanez-Pena failed to appear at that removal hearing, so the Immigration Judge ordered her removed in absentia on that date.

In February 2017, Yanez-Pena filed a motion to reopen her removal proceedings on the grounds that she had not received notice of her January 28, 2008 hearing. The Immigration Judge denied the motion to reopen, concluding that Yanez-Pena failed to rebut the presumption of delivery by mail because it was "highly unlikely that none of the three pieces of correspondence was properly delivered by the United States Postal Service."

## III.

Yanez-Pena timely appealed the Immigration Judge's denial of the motion to reopen to the BIA, but the BIA dismissed her appeal. The BIA also denied Yanez-Pena's motion to reconsider the dismissal of her appeal. Yanez-Pena timely appealed the decisions of the BIA to this court,[3] and we denied her original petition for review.[4] We concluded that (1) substantial evidence supported the BIA's conclusion that Yanez-Pena received the notice of hearing, and (2) the BIA did not abuse its discretion in denying both her motion to reopen and her motion to reconsider.[5]

---

[3] *See Yanez-Pena v. Sessions*, 741 F. App'x 272 (5th Cir. 2018).

[4] *See id.* at 274.

[5] *Id.*

No. 19-60464

IV.

While Yanez-Pena's case seeking to reopen her removal proceedings on the grounds that she did not receive the notice of hearing was pending before this court, the United States Supreme Court decided *Pereira v. Sessions*.[6] In *Pereira*, the Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule."[7] Yanez Pena filed a second motion to reopen, asking the BIA to reopen her removal proceeding in light of *Pereira*, (1) to allow her to seek cancellation of her removal because the deficient NTA she received did not trigger the "stop-time" rule and she is otherwise eligible for cancellation and (2) to rescind the in absentia order of removal because she did not receive proper notice of the removal hearing.[8]

The BIA denied the second motion to reopen in June 2019, concluding that (1) Yanez-Pena failed to present prima facie evidence of her eligibility for cancellation because her continuous presence ended when she received the notice of hearing that specified the time and place of the hearing, thereby perfecting the originally deficient NTA, and (2) rescission of the absentia order of removal is not required because the subsequent notice of hearing remedied the deficient NTA and provided Yanez-Pena with proper notice of the hearing. Yanez-Pena timely appealed the decision of the BIA on the second motion to

---

[6] 138 S. Ct. 2105.

[7] *Id.* at 2113-14.

[8] Before the BIA, Yanez-Pena also contended that (1) the defective NTA deprived the immigration judge of jurisdiction, (2) the defective NTA violated her due process rights, and (3) the 90-day period to file a motion to reopen should be equitably tolled. Yanez-Pena does not raise these claims on appeal, so they are abandoned and waived. *See, e.g., Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004) (holding that a claim not raised in a petition for review is waived).

No. 19-60464

reopen to this court. We now consider the merits of her second motion to reopen.

V.

We review the BIA's denial of a motion to reopen "under a highly deferential abuse-of-discretion standard."[9] "The BIA's ruling will stand, even if this court concludes it is erroneous, 'so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach.'"[10] We review the BIA's conclusions of law de novo but we give deference "to the BIA's interpretation of immigration regulations if that interpretation is reasonable."[11]

VI.

Yanez-Pena first takes issue with the BIA's conclusion that she is unable to demonstrate her prima facie eligibility for cancellation of removal because her continuous presence ended when she was mailed a notice of hearing that contained the time and place of her initial removal hearing. The Attorney General of the United States has discretion to "cancel removal" of "an alien who is inadmissible or deportable from the United States" and to "adjust [that person] to the status of an alien lawfully admitted for permanent residence" if the person meets specified criteria.[12] Relevant here, cancellation of removal and adjustment of status may occur if the alien "has been physically present in the United States for a continuous period of not less than 10 years."[13]

---

[9] *Singh v. Lynch*, 840 F.3d 220, 222 (5th Cir. 2016); *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014).

[10] *Singh*, 840 F.3d at 222 (quoting *Zhao v. Gonzales*, 404 F.3d 295, 303-04 (5th Cir. 2005)).

[11] *Barrios-Cantarero*, 772 F.3d at 1021.

[12] 8 U.S.C. § 1229b(b).

[13] *Id.* § 1229b(b)(1)(A). The other requirements for cancellation of removal are that the alien: "[1] has been a person of good moral character during such period, [2] has not been

No. 19-60464

The so-called "stop-time" rule operates to end the alien's requisite period of physical presence here. It is triggered "when the alien is served a notice to appear under section 1229(a)."[14] Section 1229(a) provides, "[i]n removal proceedings . . . written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien . . . specifying [among other required items,] (G)(i) [t]he time and place at which the proceedings will be held."[15] Section 1229(a) also provides, "in the case of any change or postponement in the time and place of such proceedings, . . . a written notice shall be given . . . to the alien . . . specifying—(i) the new time or place of the proceedings."[16]

In *Pereira*, the Supreme Court held that an NTA that does not specify the time and place at which the proceedings will be held does not trigger the stop-time rule.[17] In reaching that conclusion, the Court did not resort to *Chevron* deference because the statutory text alone was sufficient to resolve the case.[18] The alien in *Pereira* received an NTA that ordered him to appear before an Immigration Judge in Boston "on a date to be set at a time to be set" but otherwise included all information required under §1229(a)(1).[19] The immigration court thereafter attempted to mail the alien a notice of hearing that included the date and time of the initial hearing, but the notice was returned as undeliverable because it was not sent to the address that the alien had provided to the Department of Homeland Security.[20] Because the alien did

---

convicted of an offense . . . and [3] establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 1229b(d)(1)(B)-(D).

[14] *Id.* § 1229b(d)(1)(A).
[15] *Id.* § 1229(a)(1).
[16] *Id.* § 1229(a)(2).
[17] 138 S. Ct. at 2113-14.
[18] *Id.*
[19] *Id.* at 2112.
[20] *Id.*

not receive the subsequent notice, which did include the time and place of the hearing, the *Pereira* Court did not reach the precise question at issue in this case: whether the subsequent mailing of a hearing notice that includes the time and place of the initial hearing cures an originally defective NTA and triggers the stop-time rule.[21]

After *Pereira*, the BIA squarely addressed the issue in this case in *Matter of Mendoza-Hernandez*,[22] determining "that in cases where a notice to appear does not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information perfects the deficient notice to appear, triggers the 'stop-time' rule, and ends the alien's period of continuous residence or physical presence in the United States."[23] In that case, the BIA concluded that the stop-time rule was triggered, and the aliens' period of physical presence ended, on the date of mailing of the subsequent notice of hearing that included the time and place of the hearing.[24] The BIA explained that, although § 1229(a) refers to "*a* notice to appear," the statute does not necessarily require the "written notice" to be provided in a single document.[25] "Rather, it may be provided in one or more documents—in a single or multiple mailings . . . so long as the essential information is conveyed in writing and fairly informs the alien of the time and place of the proceedings."[26]

Post-*Pereira*, we addressed whether the immigration court had jurisdiction over removal proceedings when the original NTA did not include

---

[21] *See Pierre-Paul v. Barr*, 930 F.3d 684, 690-91 (5th Cir.), *petition for cert. filed* (U.S. Dec. 16, 2019) (No. 19-779) (noting that *Pereira* "did not directly address whether a defective notice to appear may be cured by a subsequent notice of hearing").

[22] *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520, 529 (BIA 2019) (en banc).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 531 (emphasis added).

[26] *Id.*

the time and place of the initial hearing but a subsequent notice of hearing did include that information.[27] In *Pierre-Paul v. Barr*, we concluded that, to the extent the original NTA was defective, "the immigration court cured the defect by subsequently sending a notice of hearing that included the time and date of the hearing."[28] We reasoned that the "written notice," referred to in § 1229(a) as "*a* notice to appear,"[29] does not require that all the necessary items be contained in a single document, particularly since "words importing the singular include and apply to several persons, parties, or things."[30] We held that "a defective notice to appear may be cured with a subsequent notice of hearing," reasoning that this "two-step process comports with relevant statutory language."[31]

Other circuit courts to address the application of the stop-time rule when the alien is served with a defective NTA but is subsequently mailed a notice of hearing that includes the time and place of the hearing have reached conflicting results.[32] The Sixth Circuit in *Garcia-Romo v. Barr* concluded that

---

[27] *Pierre-Paul*, 930 F.3d at 688; *see also United States v. Pedroza-Rocha*, 933 F.3d 490, 497 (5th Cir. 2019) (relying on *Pierre-Paul* and holding that "any alleged defect [in the NTA that did not include the time and place of the hearing] was cured by the later service of a notice of hearing").

[28] *Pierre-Paul*, 930 F.3d at 689. In both *Pereira* and *Pierre-Paul*, the original NTA failed to specify the "date and time" of the initial hearing. *See Pereira*, 138 S. Ct. at 2112 ("Critical here, the notice did not specify the date and time of Pereira's removal hearing."); *Pierre-Paul*, 930 F.3d at 691 ("Pereira was served with a notice to appear that omitted the date and time of his initial hearing."). Section 1229(a)(1) requires notice of the "time and place." In this case, the NTA Yanez-Pena received also failed to specify the "date and time" of her initial hearing but included the "place" of the hearing. We use "time and place" where practicable, as this is what the statute requires.

[29] 8 U.S.C. § 1229(a)(1) (emphasis added).

[30] *Pierre-Paul*, 930 F.3d at 691 (citing 1 U.S.C. § 1).

[31] *Id.* at 690-91.

[32] *Compare Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), *reh'g en banc granted* 2020 WL 522150 (9th Cir. Jan. 23, 2019) (holding that this two-step process does not trigger the stop-time rule) *and Guadalupe v. Attorney Gen. U.S.*, No. 19-2239, 2020 WL 913242 (3d Cir. Feb. 26, 2020) (rejecting the two-step notification process with respect to the stop-time rule) *with Garcia-Romo v. Barr*, 940 F.3d 192 (6th Cir. 2019) (holding that, after the receipt of a

No. 19-60464

"written communications to a noncitizen in multiple components or installments may collectively provide all the information necessary to constitute 'a notice to appear' under 8 U.S.C. § 1229b(d)."[33] That court held that "the government triggers the stop-time rule when it sends a noncitizen all the required categories of information under § 1229(a)(1)(A)-(G) through one or multiple written communications."[34] In contrast, the Ninth Circuit, in prohibiting the two-step process in *Lopez v. Barr*, concluded that "any document containing less than the full set of requirements listed in Section 1229(a)(1) is not a Notice to Appear within the meaning of the statute" and does not trigger the stop-time rule.[35] That court reasoned that the use of the singular "*a* notice to appear" "indicates that [only the] service of a sing[le] document—not multiple [documents]—triggers the stop-time rule."[36] Recently, the Third Circuit rejected the two-step notification process, reasoning that *Pereira* establishes a "bright line rule" and that, for purposes of the stop-time rule, "a defective NTA may not be cured by a subsequent notice of hearing containing the omitted information."[37]

We agree with the BIA's determination that Yanez-Pena cannot demonstrate her prima facie eligibility for cancellation. She cannot do so because the stop-time rule is triggered when an alien receives notice of all the information required under § 1229(a)(1)(A)-(G), whether that takes place in one or more communications. This conclusion extends our reasoning in *Pierre-Paul* that "*a* notice to appear" and "[t]he noun 'written notice' as used in

---

deficient NTA that does not include the time and place of the original hearing, receipt of a subsequent notice of hearing containing that information triggers the stop-time rule).

[33] *Garcia-Romo*, 940 F.3d at 201.

[34] *Id.*

[35] *Lopez*, 925 F.3d at 400.

[36] *Id.* at 402.

[37] *Guadalupe*, 2020 WL 913242, at *2.

1229(a) alone do[] not specify that all the required items must be contained in a single document."[38] It also aligns with the Sixth Circuit's reasoning in *Garcia-Romo* that multiple documents may collectively provide the notice required under § 1229(a). The statute unambiguously leads us to this result.

Our conclusion also aligns with the BIA's interpretation of the statute as set forth in its en banc opinion in *Mendoza-Hernandez*.[39] Even if we were to conclude that "written notice" and "a notice to appear" are ambiguous, we would defer to the BIA's reasonable interpretation of the statute that "where a notice to appear does not specify the time and place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information 'perfects' the deficient notice to appear, satisfies the notice requirements . . . , and triggers the 'stop-time' rule."[40]

We owe *Chevron* deference to the BIA's interpretation of immigration law.[41] "Under *Chevron*, the statute's plain meaning controls, whatever the [BIA] might have to say. But if the law does not speak clearly to the question at issue, a court must defer to the [BIA]'s reasonable interpretation, rather than substitute its own reading."[42] Deferring to the BIA's interpretation, we would reach the same result, because the subsequent notice of hearing delivered to Yanez-Pena, which included the time and place of the initial hearing, cured the defects in the original NTA and triggered the stop-time rule.

Yanez-Pena's continuous presence ended not on August 31, 2007 when she was served with the defective NTA, but rather on September 10, 2007, when she was mailed the subsequent notice of hearing setting forth the time

---

[38] *Pierre-Paul*, 930 F.3d at 691.

[39] *See Mendoza-Hernandez*, 27 I. & N. Dec. 520.

[40] *Id.* at 535.

[41] *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 57 (2014); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

[42] *Scialabba*, 573 U.S. at 57.

No. 19-60464

and place of her initial removal hearing and received all of the information required under § 1229(a)(1)(A)-(G).[43] Yanez-Pena entered the United States in August 2007, so she did not accrue the requisite ten years of presence to be eligible for cancellation of removal and is unable to demonstrate her prima facie eligibility for cancellation.[44] The BIA did not abuse its discretion in denying Yanez-Pena's motion to reopen her removal proceedings to allow her to seek cancellation of her removal.

## VII.

Yanez-Pena also takes issue with the BIA's decision declining to reopen her removal proceedings and rescind the in absentia order of removal. She maintains that, in light of *Pereira*, the NTA she received was defective and she did not receive proper notice of the hearing. An alien may be ordered removed in absentia if (1) she has been properly served with the "written notice required under paragraph (1) or (2) of section 1229(a)," and (2) the government "establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."[45]

When we reviewed Yanez-Pena's first motion to reopen, we determined that "[s]ubstantial evidence supports the BIA's determination that the hearing notice was served on Yanez-Pena via regular mail to the admittedly correct address that she provided to the immigration court."[46] As a result, the only

---

[43] The BIA used November 19, 2007 as the date Yanez Pena's continuous presence ended. This date corresponds with the final notice of hearing she received, rescheduling the hearing to January 28, 2008, the date on which the immigration judge ordered her removed in absentia. Because of our holding that the stop-time rule is triggered when the alien receives all of the information required under § 1229(a)(1)(A)-(G), regardless of whether that information is conveyed through one or multiple communications, the stop-time rule was triggered on September 10, 2007, when Yanez-Pena received the last of information required under § 1229(a)(1)(A)-(G), the time and place of her initial hearing.

[44] *See* 8 U.S.C. § 1229b(b).

[45] *Id.* § 1229a(b)(5)(A).

[46] *Yanez-Pena*, 741 F. App'x at 273.

11

## No. 19-60464

question that remains is whether Yanez-Pena received the "written notice required under paragraph (1) or (2) of section 1229(a)."[47] Because we hold that the information in the written notice required under paragraph (1) of section 1229(a), otherwise referred to as an NTA, may be contained in one or more documents, and because Yanez-Pena received all such information, the BIA did not abuse its discretion in declining to reopen and rescind her in absentia order of removal.

## VIII.

The petition for review is DENIED.

---

[47] 8 U.S.C. § 1229a(b)(5)(A).