RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JUAN RAMON VALADEZ-LARA,

　　　　　　　　　　　*Petitioner*,

　　　　　*v.*

WILLIAM P. BARR, Attorney General,

　　　　　　　　　　　*Respondent*.

No. 19-4013

_____

On Petition for Review from the Board of Immigration Appeals;
No. A079-012-369.

Decided and Filed:  June 26, 2020

Before:  BATCHELDER, STRANCH, and MURPHY, Circuit Judges.
_____

## COUNSEL
_____

**ON BRIEF:**  Kim K. Alabasi, ALABASI & ASSOCIATES CO., LPA, Cleveland, Ohio, for Petitioner.  Kathryn M. McKinney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
_____

## OPINION
_____

MURPHY, Circuit Judge.  In 2003, 15-year-old Juan Ramon Valadez Bonilla came to the United States illegally.  When Valadez did not appear at his removal hearing, an immigration judge ordered him removed in his absence.  In 2019, after the government charged him with illegal reentry, Valadez sought to rescind his earlier removal order on the ground that he had not received notice of his hearing.  The Board of Immigration Appeals found that Valadez failed to prove the lack of notice, relying on his long delay in seeking to rescind the removal order after

he learned of it.  Because the Board did not abuse its discretion in reaching this conclusion, we must deny Valadez's petition for review.

I

Valadez (who appears to have been mistakenly identified as Valadez-Lara rather than Valadez Bonilla in his immigration proceedings) was born in Mexico in March 1988.  Since that time, his father has worked as a migrant farmworker in the United States.  In early 2003, a year after his mother died, Valadez illegally came to the United States at the age of 15 to be with his father.  Valadez's aunt and uncle allowed the boy to stay with them in Lorain, Ohio, because of the nature of his father's job.  A few months later, however, police charged him with drunk and disorderly conduct.  That charge drew the attention of the immigration authorities, who took custody of Valadez.

On May 13, 2003, immigration authorities released Valadez into the care of his aunt and uncle at their home on Toledo Avenue in Lorain.  Valadez identified their address as the place at which he would be staying.  The same day, immigration authorities personally served Valadez with a notice to appear.  The notice charged him with being subject to removal from the United States and indicated that he must appear before an immigration judge "on a date to be set at a time to be set."  Valadez signed a certificate of service admitting he had received personal service of this notice to appear.

After Valadez's release, immigration authorities mailed multiple notices about his upcoming removal hearing to his aunt and uncle's address.  On May 27, 2003, they mailed a notice of a removal hearing set for November 7, 2003.  On September 2, 2003, they sent another notice identifying a new hearing date: November 8, 2004.  A third notice, sent on November 9, 2004, again rescheduled the hearing for December 22, 2004.  And a fourth, sent on January 30, 2006, set a fourth hearing date for the following month.

Yet Valadez's aunt and uncle have asserted that they did not receive these notices.  His aunt was under the impression that Valadez's father had applied for his son to be able to stay in the country legally.  She also suggested that postal workers in Lorain often confused Toledo *Avenue*, the street on which they lived, with nearby Toledo *Road*.

The removal hearing eventually occurred on February 16, 2006. Valadez did not appear, and an immigration judge ordered him removed. Two years later, in August 2008, Valadez was removed to Mexico shortly after he was stopped for speeding while driving without a license.

Valadez illegally reentered this country many times over the next decade. He was removed again on November 26, 2010, May 30, 2011, June 13, 2011, and May 5, 2015. At some later point Valadez returned to Ohio. In November 2018, the government charged him with illegal reentry in violation of 8 U.S.C. § 1326(a). In March 2019, with that criminal charge pending, Valadez filed a motion to reopen his original removal proceedings and to rescind his removal order on the ground that he had not received notice of his immigration hearing in accordance with 8 U.S.C. § 1229(a)(1) or (2). *See id.* § 1229a(b)(5)(C)(ii).

The immigration judge denied Valadez's motion to reopen on two grounds. To begin with, the judge found that 8 U.S.C. § 1231(a)(5) categorically prohibited Valadez from seeking this type of relief. Section 1231(a)(5) provides that, if the Attorney General finds that an immigrant has illegally reentered this country after having been removed under an order of removal, the prior order "is not subject to being reopened or reviewed" and the immigrant "is not eligible and may not apply for any relief under this chapter." *Id.*

Alternatively, the judge rejected Valadez's argument that he lacked proper notice of his immigration hearing. An immigration judge may rescind a removal order entered in an immigrant's absence if a motion to reopen shows that the immigrant "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)[.]" 8 U.S.C. § 1229a(b)(5)(C)(ii). Section 1229(a)(1) identifies the initial notice to appear that an immigrant must receive; § 1229(a)(2) identifies the notice an immigrant must receive for a change in the time or place of the proceedings. *Id.* § 1229(a)(1)–(2). The Board of Immigration Appeals has created a presumption that an immigrant has received the required notice if it is properly mailed (although the presumption is "weaker" if the notice is sent via regular mail rather than certified mail). And the Board has told immigration judges to consider all relevant evidence when evaluating whether an immigrant has overcome this presumption. It has identified several factors to guide the inquiry, including whether the immigrant has provided affidavits attesting to the lack of notice, whether the immigrant has acted diligently in attempting to overturn the removal order, and

whether the immigrant has previously filed any applications for relief (which might suggest that the immigrant had an incentive to appear and would not intentionally skip the hearing).

Applying these factors, the immigration judge found that Valadez could not overcome the presumption that he received sufficient notice. While Valadez, his aunt, and his uncle attested that they did not receive the notices, the judge noted that immigration authorities had mailed Valadez four separate notices and none were returned as undeliverable. Valadez also was aware of his proceedings because he signed the initial notice to appear. And Valadez showed no diligence in attempting to rescind the removal order after learning of it by no later than August 2008. The judge also rejected Valadez's related argument that he did not receive an adequate notice to appear under § 1229(a)(1) because his original notice wrongly failed to list the date of his immigration hearing. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). The judge recognized that we have held that this defect can be cured by a later notice that includes the missing information. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310–15 (6th Cir. 2018).

The Board of Immigration Appeals affirmed. It chose not to address whether 8 U.S.C. § 1231(a)(5) categorically barred relief. Instead, it upheld the judge's conclusion that Valadez failed to prove a lack of the required notice. The Board found that "his claims [were] strongly undermined by his lack of diligence in filing his motion." Valadez also could not identify any grounds for relief that would have given him an incentive to appear at his 2006 removal hearing.

II

The Board disclaimed reliance on the immigration judge's conclusion that Valadez was categorically barred from seeking relief under 8 U.S.C. § 1231(a)(5). We thus do not consider that statutory issue. *See Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam); *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010). Rather, we conclude that the Board did not abuse its discretion in holding that Valadez's motion to reopen failed to demonstrate that he lacked the required notice. 8 U.S.C. § 1229a(b)(5)(C)(ii).

A

Federal law permits immigration judges to order immigrants removed in their absence if they do not attend their scheduled immigration hearings and if immigration authorities adequately prove that the immigrants received proper notice of those hearings:

> Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

8 U.S.C. § 1229a(b)(5)(A).

Once an immigration judge issues this type of "in absentia removal order," the statute gives immigrants limited avenues to rescind the order. *See id.* § 1229a(b)(5)(C). Among other options, immigrants may show that they did not receive notice of the proceedings that they missed. Section 1229a(b)(5)(C) states that an order "may be rescinded" "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)[.]" *Id.* § 1229a(b)(5)(C)(ii). Because this language cross-references the notice requirements in a different section—§ 1229(a)(1) and (2)—we start by describing the notice that § 1229 mandates. We then turn to the principles governing a motion to reopen. We end with the principles governing our own review of a Board decision denying such a motion.

1. *Section 1229(a)(1) & (2)*. Section 1229(a)(1) and (2), the paragraphs cross-referenced in § 1229a(b)(5)(C)(ii), require notices to contain certain *information* and to be provided in certain *ways*. *First*, the paragraphs require notices to contain several pieces of information. *See Ba v. Holder*, 561 F.3d 604, 606 (6th Cir. 2009) (quoting *Ablahad v. Gonzales*, 217 F. App'x 470, 473 (6th Cir. 2007)). Section 1229(a)(1) lists the requirements for what § 1229 calls a "notice to appear." It indicates that the "written notice" must "specify[]" seven things, including the "nature of the proceedings" and the "time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(A)–(G). Section 1229(a)(2), by comparison, applies only if immigration

authorities change the time or place of the immigration proceedings. It says that, "in the case of any change or postponement in the time and place of such proceedings," another "written notice" shall "specify[]" two things: both "the new time or place of the proceedings" and "the consequences" of a failure to appear. *Id.* § 1229(a)(2)(A).

Several cases have discussed the information requirements for the "notice to appear" described in § 1229(a)(1). The Supreme Court considered § 1229(a)(1) when interpreting the "stop-time rule" governing the availability of a form of discretionary relief known as "cancellation of removal." *Pereira*, 138 S. Ct. at 2109, 2114–15. That relief requires an immigrant to have been present in this country for ten years, but the statute deems that ten-year period to end when the immigrant has been served "a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). *Pereira* held that a notice to appear that fails to identify the time and place of the immigration proceedings does not qualify as a valid "notice to appear" under § 1229(a)(1) for purposes of triggering this stop-time rule. *See* 138 S. Ct. at 2114–15.

After *Pereira*, however, we held that two written communications containing all of the information required by § 1229(a)(1) (including information about the time and place of the proceedings) can qualify as a "notice to appear" under § 1229(a)(1). We interpreted § 1229(a)(1) in this fashion when holding that an immigration court has jurisdiction if immigration authorities later send all information required by § 1229(a)(1). *See Hernandez-Perez*, 911 F.3d at 310–15. And we interpreted § 1229(a)(1) in this fashion when holding that the stop-time rule gets triggered by a second notice containing information missing from the first notice to appear. *See Garcia-Romo v. Barr*, 940 F.3d 192, 199–201 (6th Cir. 2019).

*Second*, § 1229(a)(1) and (2) require these notices to be provided in a certain manner. Both paragraphs use the same language when describing the way in which immigration authorities must give the required notices to immigrants. The "written notice shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)[.]" *Id.* § 1229(a)(1)–(2). This language makes clear that, if "practicable" (that is, feasible), authorities should give written notice to an immigrant in person. *Webster's New World College Dictionary* 1058 (3d ed. 1996). If personal service is not practicable, by contrast, authorities may alternatively send the notice in the mail. *See Cruz-*

*Gomez v. Lynch*, 801 F.3d 695, 698–99 (6th Cir. 2015); *Camaj v. INS*, 78 F. App'x 465, 467–68 (6th Cir. 2003); *see also In re Grijalva*, 21 I. & N. Dec. 27, 34–35 (BIA 1995) (describing the Board's view of "practicable").

If immigration authorities choose the mail route, the statute says that: "Service by mail under this section shall be sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with subsection (a)(1)(F)." 8 U.S.C. § 1229(c). Section 1229(a)(1)(F), in turn, makes clear that immigrants must provide authorities with their address for receiving information. *Id.* § 1229(a)(1)(F). If they do not, authorities need not provide written notice before an immigration judge issues an in absentia removal order. *Id.* § 1229a(b)(5)(B).

2. *Motion to Reopen.* As noted, an in absentia removal order "may be rescinded" "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)[.]" *Id.* § 1229a(b)(5)(C)(ii). This text requires immigrants to "demonstrate[]" the lack of notice, so the burden of proof switches to them after a judge issues this type of removal order. *See Santos-Santos v. Barr*, 917 F.3d 486, 491 (6th Cir. 2019). This text also requires immigrants to show that they did not receive notice "in accordance with" § 1229(a)(1) or (2). So immigrants must show that the notice was not "in conformity or compliance" with the notice rules established by those paragraphs. Bryan A. Garner, *Garner's Modern English Usage* 14 (4th ed. 2016); *see Webster's*, *supra*, at 8.

Even if a notice complied with the rules listed in § 1229(a)(1) and (2), the statutory text indicates that immigrants may also argue that they did not actually "receive" the notice that was mailed to them. 8 U.S.C. § 1229a(b)(5)(C)(ii); *see Ba*, 561 F.3d at 607–08; *see also Timchenko v. Holder*, 485 F. App'x 813, 815 (6th Cir. 2012). When an immigrant moves to reopen a removal order on this ground, the Board has long presumed that the immigrant received the notice if it "was properly addressed and mailed according to normal office procedures." *Ba*, 561 F.3d at 607 (quoting *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673 (BIA 2008)); *cf.* 8 U.S.C. § 1229(c). The Board applies a weaker form of this presumption if immigration authorities send the notice via regular mail rather than certified mail. *Ba*, 561 F.3d at 607 (quoting *Matter of M-R-A-*, 241 I. & N. Dec. at 673). To decide whether an immigrant has overcome this weaker

presumption, the Board considers "all relevant evidence" on what is a classic fact question: Did the immigrant receive this notice in the mail? *M-R-A-*, 24 I. & N. Dec. at 674; *see also Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004). The Board has also identified common factors to help answer that fact question: Did the immigrant or other individuals with knowledge attest to the lack of receipt? Did the immigrant diligently seek to rescind the order after learning of it? Did the immigrant have applications for relief on file, which would suggest an incentive to appear? Did other evidence indicate that the immigrant had a ground for relief, which also would suggest an incentive to appear? Did the immigrant attend other hearings? And are there any other circumstances or evidence that suggest possible lack of receipt? *M-R-A-*, 24 I. & N. Dec. at 674; *see also Santos-Santos*, 917 F.3d at 492; *Thompson v. Lynch*, 788 F.3d 638, 643 (6th Cir. 2015); *Ly v. Holder*, 327 F. App'x 616, 622 (6th Cir. 2009).

This motion-to-reopen provision also raises one last grammar issue. Immigrants must demonstrate that they did not receive notice in conformity with "paragraph (1) *or* (2)" of § 1229(a). 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). Suppose there is no dispute that an immigrant received an initial notice to appear under paragraph (1), but did not receive the notice of a changed date under paragraph (2). Can the immigrant seek relief through a motion to reopen? On first read, the disjunctive "or" suggests that immigrants need only prove a lack of notice under *either* paragraph (1) *or* paragraph (2) in the "alternative." *Webster's*, *supra*, at 951; *cf. OfficeMax, Inc. v. United States*, 428 F.3d 583, 588–89 (6th Cir. 2005). Yet *Santos-Santos* suggested that an immigrant must prove a lack of notice under *both* paragraph (1) *and* paragraph (2). 917 F.3d at 492. We did not offer textual support for this view, *id.*, but perhaps the "or" could be read as an "and" because the statute requires proof of a negative. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 120–21 (2012). "Under DeMorgan's Theorem the denial of the alternation [not (A or B)] is equivalent to the conjunction of the denials [not A and not B]." *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 815 n.19 (3d Cir. 1994). (DeMorgan's Theorem is a principle used in formal logic to show how language phrased in the disjunctive can be rephrased in the conjunctive when followed by a negative word like "not." *See id.*; *see also* Scalia & Garner, *supra*, at 119.) Ultimately, though, *Santos-Santos* did not need to resolve this issue. The notice to appear in that case did not satisfy § 1229(a)(1) because it did not include the date of the proceeding. 917 F.3d at 492. Yet the immigrant was

sent a later notice that contained the missing date. *Id.* at 488. Under our interpretation of § 1229(a)(1)—that its requirements can be met through two written communications—the combined notices in *Santos-Santos* would have satisfied § 1229(a)(1) even if the first notice alone did not. *See Garcia-Romo*, 940 F.3d at 199–201; *see also Yanez-Pena v. Barr*, 952 F.3d 239, 247 (5th Cir. 2020).

3. *Petition for Review.* We generally have jurisdiction to review only a "final order of removal." 8 U.S.C. § 1252(a). Yet courts have long "treat[ed] denials of motions to reopen as 'final orders of removal'" under this statute. *Shabo v. Sessions*, 892 F.3d 237, 240 (6th Cir. 2018); *see Mata v. Lynch*, 135 S. Ct. 2150, 2154 (2015). Our review, though, is constrained in two ways—one applicable to motions seeking to reopen in absentia removal orders and the other applicable to all motions to reopen. For one thing, once an immigration judge has issued an in absentia removal order, the immigration laws confine our review "to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." 8 U.S.C. § 1229a(b)(5)(D). We have also interpreted this limitation as extending to a motion to reopen an in absentia removal order. *See Santos-Santos*, 917 F.3d at 489.

For another, "[m]indful of the Board's 'broad discretion'" over whether to grant a motion to reopen, "courts have employed a deferential, abuse-of-discretion standard of review." *Kucana v. Holder*, 558 U.S. 233, 242 (2010). We will intervene only if the denial of such a motion was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010) (citations omitted). And if a denial turns on disputed facts, we must treat "the administrative findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

B

Valadez cannot overcome the deference that we must give the Board's denial of his motion to reopen. The Board could reasonably conclude that Valadez did, in fact, receive notice in conformity with all requirements in § 1229(a)(1) and (2). *See Camaj*, 625 F.3d at 991.

Start with the content requirements in § 1229(a)(1) and (2). Valadez's initial notice to appear (issued on May 13, 2003) contained all information required by § 1229(a)(1) but the date of his hearing. *See* 8 U.S.C. § 1229(a)(1)(G)(i). While the Supreme Court has held that a missing date means that a document does not satisfy § 1229(a)(1), *see Pereira* 138 S. Ct. at 2114–15, Valadez was mailed a notice two weeks later (on May 27, 2013) that contained the missing date. And we have held that two written communications in combination can meet § 1229(a)(1)'s requirements. *See Garcia-Romo*, 940 F.3d at 199–201; *see also Yanez-Pena*, 952 F.3d at 247. So these notices satisfied paragraph (1). Next, the three later mailings over the course of the following two years identified the new hearing dates and described the consequences for failing to appear, thereby satisfying § 1229(a)(2)'s requirements.

Turn to the manner-of-delivery requirements in § 1229(a)(1) and (2). Valadez was personally served with the initial notice to appear and signed a certificate acknowledging that he had received the notice. That method of delivery satisfied § 1229(a)(1). And all later notices were mailed to the address that Valadez had provided for his aunt and uncle's home on Toledo Avenue. Valadez has never argued that personal service of these later mailings was "practicable," especially considering the Board's longstanding reading of that word. *See Cruz-Gomez*, 801 F.3d at 698–99. So these mailings to Valadez's last known address satisfied § 1229(a)(1) and (2). *See also* 8 U.S.C. § 1229(c).

Because immigration authorities properly provided notice in accordance with § 1229(a)(1) and (2), this case boils down to whether Valadez proved that he did not *receive* the notices that were mailed to his aunt and uncle's address. And a "reasonable adjudicator" could conclude that Valadez failed to overcome the presumption that he had, in fact, received these notices. 8 U.S.C. § 1252(b)(4)(B). The evidence was decidedly mixed. On the one hand, Valadez and his aunt and uncle submitted affidavits indicating that they did not receive the

mailed notices.  On the other, Valadez was mailed *four* separate notices and none was returned as undeliverable.  Not only that, Valadez learned of the in absentia removal order by August 2008 at the latest.  Yet he made no effort to rescind the order for over a decade, until March 2019.  *See Sosa-Perdomo v. Lynch*, 644 F. App'x 320, 321 (5th Cir. 2016) (per curiam); *cf. Acquaah v. Holder*, 589 F.3d 332, 336 (6th Cir. 2009).  And Valadez offered no grounds to the Board indicating that he would have been entitled to any type of relief in 2003, which suggests that he had no incentive to appear at his immigration hearing at that time.  *See Santos-Santos*, 917 F.3d at 493.  With the evidence conflicting in this way, a reasonable adjudicator could conclude that Valadez failed to overcome the presumption that he received the mailed notices.  That fact bars us from granting relief under our standard of review.  *See* 8 U.S.C. § 1252(b)(4)(B).

Valadez's responses do not change things.  He points out that the initial notice to appear did not include the date.  As noted, however, a later mailed notice did.  The combined notices satisfied § 1229(a)(1) under our precedent.  *See Garcia-Romo*, 940 F.3d at 199–201.  This case thus does not require us to decide whether Valadez must prove a lack of notice under both paragraph (1) *and* paragraph (2) to challenge an in absentia removal order under 8 U.S.C. § 1229a(b)(5)(C)(ii).  Valadez cannot prove a lack of the required notice under *either* paragraph.

Valadez next notes that he was misidentified in all of the government paperwork as Juan Ramon Valadez-Lara rather than Juan Ramon Valadez Bonilla.  He fails to explain why this error would have prevented the notices from reaching him.

Valadez lastly reweighs the evidence.  He highlights the affidavits from his aunt and uncle.  And he attempts to explain his lack of diligence, noting that he did not know he could challenge the removal order.  While this evidence might support his claimed lack of notice, the weighing of the conflicting evidence was for the immigration judge and the Board.  Reweighing the evidence "is not part of this Court's role" under our substantial-evidence standard of review for the Board's findings of fact.  *See Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009).  And the Board had sufficient evidence to conclude that Valadez failed to overcome the presumption of receipt.

We deny the petition for review.