NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0298n.06

No. 20-4062

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| HECTOR MANUAL AGUILAR, aka/Hector Manuel Aguilar, | ) | **FILED** |
| | ) | Jun 28, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| **Petitioner,** | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | OF A FINAL ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| | ) | |
| **Respondent.** | ) | **OPINION** |
| | ) | |

BEFORE: BOGGS, MOORE, and LARSEN, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Hector Manual Aguilar petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying his motion to reopen an in absentia removal order. For the following reasons, we conclude that the BIA did not abuse its discretion in denying Aguilar's motion to reopen and rescind his in absentia removal order, and we **DENY** Aguilar's petition for review.

I. BACKGROUND

Aguilar is a native and citizen of El Salvador. Administrative Record ("A.R.") at 109 (Aguilar Aff. ¶ 1); *id.* at 178–79 (Passport). In June 1993, when Aguilar was fifteen years old, he entered the United States without inspection. *Id.* at 109 (Aguilar Aff. ¶ 1); *id.* at 239 (Record of Deportable Alien). In 1996, Aguilar filed an affirmative asylum application, alleging threats of violence from guerrillas. *Id.* at 218–23 (Appl. for Asylum and Withholding of Removal). The

asylum officer determined that, although Aguilar was credible, Aguilar had not established that he experienced past persecution or that he had a credible fear of future persecution. *Id.* at 249–50 (Asylum Officer Assessment). The asylum officer thus declined to grant Aguilar's application and referred his case to the immigration court for further hearing. *Id.* The former Immigration and Naturalization Service ("INS") initiated removal proceedings against Aguilar in 1997. *Id.* at 252–53 (Notice to Appear).

INS subsequently served a Notice to Appear on Aguilar via certified mail sent to Aguilar's address on file:  330 Virginia Lee Court, Apt. 5, Columbus, OH 43209 ("the 330 Virginia Lee Court address"). *Id.* During Aguilar's removal proceedings, the immigration court sent three Notice of Hearing documents by regular mail to the 330 Virginia Lee Court address. *Id.* at 217 (Nov. 6, 1998 Hr'g Not.); *id.* at 244 (Mar. 20, 1998 Hr'g Not.); *id.* at 246 (Oct. 17, 1997 Hr'g Not.), and one Notice of Hearing document by personal service, *id.* at 245 (Feb. 19, 1998 Hr'g Not.). Aguilar appeared at the first three Master Calendar hearings. The last Notice of Hearing sent to Aguilar, dated November 6, 1998, informed Aguilar of a Master Calendar hearing scheduled for June 4, 1999. *Id.* at 217 (Nov. 6, 1998 Hr'g Not.). Aguilar submitted a change-of-address form to the immigration court dated June 2, 1999. It informed the court that he had moved from 330 Virginia Lee Court, Apt. 5, Columbus, OH 43209 to 3130 Allegheny Ave., Apt. B, Columbus, OH 43209. *Id.* at 112 (Change of Address Form). When Aguilar failed to appear at his June 4, 1999 Master Calendar hearing, the immigration judge ("IJ") found him removable and ordered him removed in absentia. *Id.* at 215–16 (06/04/99 IJ Decision). The immigration court sent the removal order the same day by regular mail to the 330 Virginia Lee Court address. *Id.*

In 2001, Aguilar applied for and received Temporary Protected Status ("TPS") as a national of El Salvador.[1]   A.R. at 109–10 (Aguilar Aff. ¶ 7); *see also id.* at 105–08 (Aguilar's Emp. Authorization Docs.).   According to his affidavit, Aguilar assumed that his immigration case was "fine" because he did not receive any documents from the immigration court.  *Id.* at 109 (Aguilar Aff. ¶ 6).   In 2015, the United States Citizenship and Immigration Services ("USCIS") withdrew his TPS because of disqualifying misdemeanor convictions.  *Id.* at 171–72 (USCIS Denial of TPS). After an Ohio state court vacated these convictions because the trial court had not informed him of the immigration consequences of these convictions before he pleaded guilty, the Administrative Appeals Office ("AAO") granted his motion to reopen his TPS in an order dated August 24, 2018. *Id.* at 11–14 (08/24/2018 AAO Decision).

On March 19, 2018, Aguilar filed a motion to reopen and rescind the in absentia removal order, claiming that he did not receive notice of the hearing or the removal order.  *Id.* at 86–101 (Mot. to Reopen).  In support of his motion, he submitted an affidavit stating that he first learned of the removal order when he hired an attorney to help with his TPS appeal.  *Id.* at 110 (Aguilar Aff. ¶ 8).  He argued that his affidavit, combined with his pattern of appearing at his prior hearings and his pending application for asylum and withholding of removal at the time of the hearing, rebutted the presumption that he had received the hearing notice.  *Id.* at 91–95 (Mot. to Reopen at 6–10).  Alternatively, Aguilar argued that the immigration court should exercise its discretion to reopen his case *sua sponte* because he previously had TPS and is *prima facie* eligible for that status; he has resided in the United States since age fifteen; he submitted an affirmative application

---

[1]El Salvador's TPS designation remains in effect.  *Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations for El Salvador, Haiti, Nicaragua, Sudan, Honduras, and Nepal*, 85 Fed. Reg. 79,208 (Dec. 9, 2020).

for asylum and attended all prior immigration hearings; he submitted change-of-address forms to the immigration court apprising it of his address; he has never received review of his asylum application by the immigration court; he is "a single father and sole economic provider" of two U.S. citizen children and is expecting a third child with his partner; and he fears that he and his U.S. citizen children would face dangerous conditions in El Salvador. *Id.* at 95–98 (Mot. to Reopen at 10–13); *id.* at 110 (Aguilar Aff. ¶¶ 10–11).

In a brief, one-paragraph analysis, the IJ denied his motion to reopen his in absentia removal order. *Id.* at 76–77 (04/27/18 IJ Decision at 2–3). At the outset, the IJ criticized Aguilar's March 2018 motion to reopen as "grossly untimely." *Id.* at 76 (04/27/18 IJ Decision at 2). The IJ found that Aguilar had failed to rebut the presumption that he had received notice of the June 4, 1999 hearing because the immigration court mailed the Notice of Hearing to the 330 Virginia Lee Court address on November 6, 1998 and he submitted the change-of-address form on June 2, 1999. *Id.* at 76–77 (04/27/18 IJ Decision at 2–3). Further, the IJ held that Aguilar failed to establish *prima facie* eligibility for asylum because he did not file a Form I-589, Application for Asylum and for Withholding, and the IJ did not have jurisdiction to adjudicate his TPS application. *Id.* at 77 (04/27/18 IJ Decision at 3).

The BIA, by a divided vote, affirmed the IJ's denial of Aguilar's motion to reopen. *Id.* at 3–7 (09/17/2020 BIA Decision). The BIA concluded that Aguilar did not rebut the presumption of notice that applies to hearing notices delivered by regular mail. *Id.* at 4 (09/17/2020 BIA Decision at 2). The June 4, 1999 hearing notice was not returned as undeliverable. *Id.* The BIA noted that Aguilar had received prior hearing notices at the 330 Virginia Lee Court address and attended those hearings, and the immigration court sent the Notice of Hearing for the June 4, 1999

hearing seven months prior to when he submitted the change-of-address form. *Id.* The BIA faulted Aguilar for waiting three years after learning in 2015 of the removal order, through the withdrawal of his TPS, to file his motion to reopen. *Id.* The BIA also concluded that Aguilar had not shown "exceptional circumstances" meriting *sua sponte* reopening. *Id.* at 5 (09/17/2020 BIA Decision at 3). Although the IJ erred by stating that Aguilar had not filed an asylum application and that she lacked the jurisdiction to review Aguilar's eligibility for TPS, the BIA concluded that Aguilar had not shown *prima facie* eligibility for asylum or TPS. *Id.* The BIA did not acknowledge the AAO's decision reopening Aguilar's TPS application, which Aguilar submitted to the BIA ten days before it issued its decision. *Id.* at 8–16 (Aguilar's Suppl. Submission to BIA).

Aguilar timely appeals. We have jurisdiction over petitions for review under 8 U.S.C. § 1252(a).

## II. STANDARD OF REVIEW

We review the denial of a motion to reopen removal proceedings for an abuse of discretion. *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009). The petitioner bears the "heavy burden" of showing that the decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Preçetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). Our review of petitions for review challenging an in absentia removal order is "confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." 8 U.S.C. § 1229a(b)(5)(D). We review legal determinations de novo. *See Zhang v. Mukasey*, 543 F.3d 851, 856 (6th Cir. 2008).

5

## III. ANALYSIS

Aguilar argues that the BIA abused its discretion in denying his motion to reopen because his affidavit stated that he did not receive notice of the hearing and the BIA incorrectly concluded that he had not shown *prima facie* eligibility for TPS. We hold that the BIA did not abuse its discretion by determining that Aguilar had not overcome the presumption of receipt and thus denying Aguilar's motion to reopen and rescind his in absentia removal order.

An IJ may enter an order of removal in absentia if a noncitizen fails to appear at a hearing after receiving written notice and the IJ finds that the noncitizen is removable. 8 U.S.C. § 1229a(b)(5)(A). If a noncitizen can establish non-receipt of the notice of the hearing, however, the non-citizen may move to reopen and rescind the removal order at any time. *Id.* at § 1229a(b)(5)(C)(ii). Service by mail of a notice of hearing gives rise to a rebuttable presumption of actual receipt. *Sanchez v. Holder*, 627 F.3d 226, 231 (6th Cir. 2010). When the immigration court sends the notice by regular mail, as the immigration court did in Aguilar's case, the presumption is "weaker than that accorded to notice sent by certified mail." *Ba v. Holder*, 561 F.3d 604, 607 (6th Cir. 2009) (quoting *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673 (B.I.A. 2008)). The IJ must consider "all relevant evidence" in deciding whether a noncitizen has rebutted the "weaker" presumption of delivery of the notice, including:

> (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's previous attendance at Immigration Court hearings, if

applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice.

*Matter of M-R-A-*, 24 I. & N. Dec. at 674; *see Valadez-Lara v. Barr*, 963 F.3d 560, 566 (6th Cir. 2020) (citing favorably the *Matter of M-R-A-* factors).

A divided three-member panel of the BIA, considering the factors outlined in *Matter of M-R-A*, concluded that Aguilar had not rebutted the presumption of delivery of notice and affirmed the decision of the IJ. A.R. at 5 (09/17/20 BIA Decision at 3). Although the BIA noted that Aguilar had submitted an affidavit stating that he did not receive notice, and that "his prior attendance at hearings, application for asylum before the former Immigration and Naturalization Service, and application for Temporary Protected Status (TPS) before the United States Citizenship and Immigration Services (USCIS), show an incentive to appear at his hearings," it concluded that Aguilar's "inaction upon learning of the removal order and the absence of other concrete action in redressing the situation" weighed in favor of affirming the IJ's determination that Aguilar had not rebutted the presumption of delivery. *Id.* at 4 (09/17/20 BIA Decision at 2). The dissenting member concluded that Aguilar had sufficiently rebutted the weaker presumption of delivery because Aguilar submitted an affidavit stating that he did not receive notice of the June 4, 1999 hearing, he submitted a change-of-address form in 1999, and he had a pending asylum application at the time of the hearing. *Id.* at 7 (09/17/20 BIA Decision at 5). These factors, the dissent argued, outweighed Aguilar's delay in moving to reopen his in absentia removal order. *Id.*

Aguilar first contends that BIA abused its discretion by concluding that he had not rebutted the presumption of notice. Pet'r Br. at 7–9. He points to his affidavit stating that he did not receive the hearing notice, his asylum application pending before the immigration court, his attendance at two prior hearings, and his submission of an updated address to the immigration court. *Id.* at 8–9.

7

In particular, he emphasizes that his affidavit rebuts the presumption that he received delivery of the notice, citing *Ba*, 561 F.3d at 607. Pet'r Br. at 9.

A petitioner's affidavit is one factor among many that the BIA may consider when determining whether a petitioner has rebutted the presumption of delivery. In accordance with *Matter of M-R-A-*, the BIA considered Aguilar's affidavit attesting that he did not receive delivery of the notice of the June 4, 1999 hearing. A.R. at 4 (09/17/2020 BIA Decision at 2). The BIA concluded, however, that other factors outweighed his affidavit, including the almost twenty-year span between the removal order and his motion to reopen, the three-year gap between when he states that he learned of the removal order and when he filed the motion to reopen, and his receipt of prior hearing notices at the 330 Virginia Lee Court address for earlier hearings that he did attend. *Id.* at 4–5 (09/17/2020 BIA Decision at 2–3). The BIA further noted that Aguilar had not submitted a change-of-address form since June 2, 1999. *Id.* at 4 (09/17/2020 BIA Decision at 2). Although we might have weighed these factors differently, we cannot say that the BIA's decision was an abuse of discretion.

The case cited by Aguilar, *Ba v. Holder*, fails to support his argument. In *Ba*, we remanded the petitioner's case to the BIA so that the petitioner would have the opportunity to establish that she resided at the address to which the immigration court had sent her hearing notice. 561 F.3d at 608. *Ba* did not hold that an affidavit stating non-receipt alone would always suffice to establish that the petitioner had resided at the address and had not received delivery of the hearing notice. To the contrary, we have affirmed the BIA's denial of a motion to reopen in cases where the petitioners submitted an affidavit stating only that they did not receive notice. *See Santos-Santos*

*v. Barr*, 917 F.3d 486, 492–93 (6th Cir. 2019); *Xinquan Zhong v. Sessions*, 744 F. App'x 921, 924 (6th Cir. 2018).

Aguilar also argues that the BIA erroneously concluded that he had not demonstrated *prima facie* eligibility for TPS. Pet'r Br. at 10–11. Aguilar maintains that the AAO's August 24, 2018 decision granting Aguilar's motion to reopen the denial of his TPS application, which the BIA received ten days prior to issuing its decision on September 17, 2018 denying his motion to reopen, establishes his *prima facie* eligibility for TPS. In his brief to the BIA and in his motion to reopen, Aguilar pointed to his *prima facie* eligibility for TPS as an exceptional circumstance meriting *sua sponte* reopening. A.R. at 97–98 (Mot. to Reopen at 12–13); *id.* at 37–38 (Br. of Resp.-Appellant at 18–19). He did not offer his *prima facie* eligibility for TPS as evidence that he did not receive notice of the June 4, 1999 hearing. For his argument that he did not receive notice of the 1999 hearing, Aguilar's prior TPS was relevant only to show that he had assumed his immigration status was proper because USCIS had approved his TPS application in 2001 and his renewal applications until 2015. *Id.* at 89 (Mot. to Reopen at 4); *id.* at 33–34 (Br. of Resp.-Appellant at 14–15).

Aguilar did not appeal the BIA's denial of his motion to reopen *sua sponte*, and thus abandoned his claim that the BIA erred by determining that he was not *prima facie* eligible for TPS. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal." (quoting *United States v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996))). Although he now challenges the BIA's determination that he was not *prima facie* eligible for TPS as part of his claim that the BIA erred by concluding that he did not rebut the presumption of delivery of notice, he failed to present *this* claim before the BIA or the IJ. We have stated that "only claims properly presented to the BIA and considered

on their merits can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the BIA did not abuse its discretion in denying Aguilar's motion to reopen and rescind his in absentia removal order, and we **DENY** Aguilar's petition for review.