**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0360n.06

**No. 08-3145**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 20, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ABDOULAYE LY, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A DECISION FROM THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General of the | ) | **O P I N I O N** |
| United States, | ) | |
| | ) | |
| Respondent. | | |

BEFORE:    **CLAY and McKEAGUE, Circuit Judges; and HOLSCHUH, District Judge.**[*]

**HOLSCHUH, District Judge**.  In this immigration case, Abdoulaye Ly ("Ly") petitions for

review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's

("IJ") denial of his motion to reopen removal proceedings.  After Ly failed to appear at his removal

hearing, the IJ ordered Ly deported *in absentia*.  Ly moved to reopen the removal proceedings,

claiming that he was not notified of the date and time of his removal hearing.  The IJ denied the

motion to reopen, finding that notice was sent to Ly's address on file, and Ly's failure to receive

notice resulted from his failure to notify the Immigration Court or the Department of Homeland

Security ("DHS") of his address change.  The BIA affirmed.  For the reasons below, we affirm the

---

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District of
Ohio, sitting by designation.

BIA's decision and deny Ly's petition for review.

## I. Background and Administrative History

Ly is a native and citizen of Mauritania. On October 10, 2000, he was admitted into the United States without inspection. On March 13, 2001, Ly filed an application for asylum with the Immigration and Naturalization Service ("INS"), now reconstituted as the DHS. Following an interview with an asylum officer on March 5, 2004, Ly's asylum application was referred to the Immigration Court. In conjunction with this referral, the DHS initiated removal proceedings against Ly by filing a Notice to Appear under section 240 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1229a. The Notice to Appear charged Ly as being removable under the INA as an alien present in the United States without being admitted or paroled after inspection by an Immigration Officer. On July 27, 2004, the Notice to Appear was sent to Ly by regular mail at his last known address—2853 Citizens Place, Apt. E, Columbus, OH 43232. The Notice ordered Ly to appear before an immigration judge at an address in Cleveland, Ohio, on a date "to be calendared." The Notice also informed Ly that he must provide the INS, in writing, with his mailing address and telephone number; that he must notify the Immigration Court immediately whenever his address changes; that hearing notices would be mailed to his address; and if he failed to attend a hearing, a removal order could be issued by the immigration judge in his absence.

At some point after the Notice to Appear was sent to Ly, the U.S. Citizenship and Immigration Services ("CIS"), a division of DHS, in response to an inquiry sent by Ly's attorney regarding the status of Ly's asylum application, advised the attorney that CIS no longer had jurisdiction over the case and that Ly's attorney should "contact the Immigration Court and request

2

that they calendar [Ly's] case."[1] On October 2, 2006, following the CIS's advice, Ly's attorney sent a letter to the Immigration Court in Arlington, Virginia requesting that Ly's case be put on the Court's calendar.[2] On November 27, 2006, almost two years after the Notice to Appear was sent, the Immigration Court in Cleveland, Ohio set Ly's removal hearing for January 10, 2007.

On November 27, 2006, the Immigration Court sent a hearing notice to Ly at the 2853 Citizens Place address. That hearing notice was returned to the court undelivered, stamped "attempted - not known, unable to forward." Ly failed to appear for the January 10, 2007 removal hearing. Because the DHS was not ready to proceed on January 10, 2007, the court continued the removal hearing until February 8, 2007. On January 10, 2007, the court sent a removal hearing notice, regarding the new hearing date of February 8, 2007, again to Ly's 2853 Citizens Place address.[3] That hearing notice, like the first, was returned undelivered to the court. Ly failed to appear at his February 8, 2007 removal hearing. The IJ conducted the removal hearing *in absentia*, and ordered Ly removed to Mauritania. A copy of the removal order was sent to Ly at the same 2853 Citizens Place address, but this time was received by Ly.

On March 1, 2007, Ly, represented by counsel, filed a motion with the IJ to reopen his removal proceedings. Ly claimed that he had not received either of the two removal hearing notices,

---

[1] The date this Status Inquiry Response was sent to Ly's attorney is unclear from the record.

[2] Why Ly's attorney contacted the Arlington, Virginia Immigration Court, and not the Cleveland, Ohio Immigration Court, is unclear from the record.

[3] The court did not send the hearing notices to Ly's attorney, because the attorney did not file a notice of appearance on behalf of Ly with the court until March 1, 2007.

because they were sent to his old address. Ly also noted that his attorney submitted a status inquiry with the asylum office and sent correspondence to the Arlington Immigration Court on October 2, 2006, enclosing a copy of the CIS's response, which advised the attorney to contact the Immigration Court and request that it calendar his client's case. The attorney never received a response from the Arlington Immigration Court.

The IJ denied Ly's motion to reopen. The IJ recognized that Ly had not received the two notices setting dates for his removal hearing. According to the IJ, however, Ly was obligated to promptly notify the court or the INS of any address change, and his failure to demonstrate that his lack of notice was not due to his neglecting the obligation to update his address precluded the reopening of his removal proceedings.

Ly appealed the IJ's decision to the BIA. Ly argued that the DHS failed to demonstrate that Ly received the July 27, 2004 Notice to Appear. Even assuming that he did receive the Notice to Appear, Ly argued that the Notice did not contain the date and time of the removal hearing, and it was undisputed that he did not receive the undelivered hearing notices.

The BIA dismissed Ly's appeal. It held, contrary to Ly's position on appeal, that it was Ly's burden to prove that he did not receive the hearing notices, and no evidence suggested that he ever provided either the DHS or the Immigration Court with a new address. It was also Ly's burden, the BIA found, to prove that he failed to receive the Notice to Appear. According to the BIA, Ly failed not only to admit or deny that he had received it, but he provided no affidavit or other documentary evidence to show that the Notice to Appear was never received or that the service was improper. Regarding the attorney's letter to the Arlington Immigration Court, the BIA noted that:

>the only evidence submitted in support of [Ly's] motion to reopen is correspondence sent by his attorney to the Immigration Court in Arlington, Virginia, in October 2006 following a Status Inquiry Response from the Chicago Asylum Office, which states that [Ly's] case was referred to the Immigration Court and that his attorney should contact the court to have the case calendared.

(J.A. 41.)  The BIA also noted in a footnote that it was "unclear why the letter was sent to the Arlington Immigration Court when [Ly] apparently lives in Ohio."

Ly appealed the BIA's decision to this Court.  This Court has jurisdiction under 8 U.S.C. § 1252(a).

## II.      Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination . . . To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, –F.3d–, 2009 WL 483241, *6 (6th Cir. Feb. 27, 2009).  This Court reviews the BIA's denial of a motion to reopen for abuse of discretion.  *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006); *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004).  This standard requires us to "'decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982)).

The Court reviews the BIA's underlying legal conclusions *de novo*.  *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005).  But the Court must defer to the BIA's reasonable interpretation of

the statutes and regulations that it administers. *Id.*; *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

**III.    Analysis**

The paramount issue in this case is whether Ly received, or can be charged with receiving, the Notice to Appear undisputedly sent to Ly by regular mail on July 27, 2004. As will be explained below, if Ly received the Notice to Appear, his duty to notify the government of his address change was triggered, and because Ly breached that duty, causing his failure to receive notice of his removal hearing, he could be ordered deported *in absentia*. If Ly failed to receive the Notice to Appear, however, his duty to notify the government of his address change never materialized, and he could not be removed *in absentia*, even if his address change caused his failure to receive notice of his removal hearing. Ly recognizes that a presumption of receipt arises when a Notice to Appear is sent by regular mail, but argues that it is a weaker presumption than that applied when notice is sent by certified mail.[4] Ly infers that the evidence of non-receipt of the Notice to Appear rebuts that weaker presumption of receipt. Before reaching the question of whether Ly has demonstrated that he failed to receive the Notice to Appear, rebutting the presumption of receipt, we must determine whether or not we have jurisdiction to address it.

---

[4] Despite recognizing that a presumption of receipt arises when notice is sent by regular mail, Ly continues to argue that the government bears the burden of demonstrating that he received the Notice to Appear. Ly is misguided. The burden is on Ly to demonstrate that he did not receive the July 27, 2004 Notice to Appear—to rebut the presumption of receipt that Ly concedes arose when the Notice was sent to him by regular mail. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii).

**A.       Jurisdiction**

Ly did not allege that he failed to receive the July 27, 2004 Notice to Appear before the IJ

or the BIA.  As the BIA noted, "not only does he fail to admit or deny that he actually received the

NTA, but he has provided no affidavit or other documentary evidence to reflect that the notice was

not received or that the service was improper."  (J.A. 41.)  The government argues that because Ly

failed to exhaust administrative remedies by presenting this issue before the BIA, this Court lacks

jurisdiction to consider it.  We disagree.

"[B]efore raising an immigration issue in federal court, a petitioner must normally present

all reviewable issues to the BIA . . . If the petitioner fails to exhaust an issue before the BIA, that

issue is normally deemed to be waived."  *Khalili*, 2009 WL 483241, at \*3; *see also Sterkaj v.*

*Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005);

*Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).  But if the BIA sua sponte raises and rules

on the merits of an issue, the BIA waives the exhaustion requirement.  *Khalili*, 2009 WL 483241,

at \*6.

> The Supreme Court has explained that "[e]xhaustion is generally required as a matter
> of preventing premature interference with agency processes, . . . [giving the agency]
> an opportunity to correct its own errors, to afford the parties and the courts the
> benefit of its experience and expertise, and to compile a record which is adequate for
> judicial review."  [*Weinberger v.*] *Salfi*, 422 U.S. [749, 765, 95 S. Ct. 2457, 45 L.
> Ed.2d 522 (1975).]  While these are important concerns, "[w]here the BIA has issued
> a decision considering the merits of an issue, even sua sponte, these interests have
> been fulfilled."  *Sidabutar* [*v. Gonzales*], 503 F.3d [1116,] 1121 [(10th Cir. 2007)].

*Id.* at \*5 (quoting *Bin Lin v. Attorney General*, 543 F.3d 114, 125 (3d Cir. 2008)).  Therefore,

appellate jurisdiction arises when the BIA sua sponte raises and rules on the merits of an issue.  *Id.*

at *6.

In this case, although the BIA noted that Ly did not deny receiving the Notice to Appear, it nevertheless considered the evidence concerning the issue. The BIA referred to the fact that Ly did not provide an affidavit swearing that he did not receive the Notice to Appear or any other documentary evidence to show that notice was not received or that the service was improper. The BIA also referred to the evidence Ly submitted in support of his motion—the letter Ly's attorney sent to the Arlington Immigration Court—but failed to further comment on that evidence.

The Court finds that the BIA not only raised the issue of whether Ly received the Notice to Appear, but it also ruled on the merits of the issue. Therefore, this Court has jurisdiction to consider the issue. *See Khalili*, 2009 WL 483241, at *6.

### B. Applicable Law

An IJ can order that an alien be deported *in absentia* if the DHS establishes by clear, unequivocal, and convincing evidence that the alien was notified of the removal hearing and that the alien is in fact removable. 8 U.S.C. § 1229a(b)(5)(A). To sufficiently notify an alien of a removal hearing, the DHS must serve a Notice to Appear either on the alien—personally or by regular mail to the alien's most recent address—or on the alien's attorney. 8 U.S.C. § 1229(a)(1); Immigration Court Rules of Procedure, 8 C.F.R. § 1003.13. The Notice to Appear must contain, among other things, the date and time of the removal hearing, and an explanation of the alien's obligation to immediately update the address and telephone number on file with the court in the event of changes to avoid *in absentia* deportation. 8 U.S.C. §§ 1229(a)(1)(F), (G)(i). Once an alien is notified—through the Notice to Appear—of his obligation to provide the DHS or the Immigration

Court with a current address, if the alien fails to update his address as required, leaving him unreachable by the court, no further notice need be provided to the alien, and the IJ may conduct the removal hearing *in absentia*. 8 U.S.C. § 1229a(b)(5)(B);[5] *Mecaj v. Mukasey*, 263 Fed. App'x 449, 451 (6th Cir. 2008) (finding that "[n]otice is not required when the alien fails to provide a current address as required by statute"); *Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2005) ("An alien should not be able to make himself unreachable, and then later ask to have his case reopened because he did not receive notice."); *Dominguez v. U.S. Attorney Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002); *In re G-Y-R-*, 23 I. & N. Dec. 181, 187-88 (BIA 2001) (finding that an alien must be informed of his obligation to provide the court with a current address before an *in absentia* removal hearing ensues for failure to provide a current address).

An alien's *in absentia* deportation order will be rescinded, and the removal proceedings reopened, if the alien demonstrates that he never received notice—through a Notice to Appear—of his obligation to provide the Immigration Court or the DHS with a current address. 8 U.S.C. § 1229a(b)(5)(C)(ii) (An *in absentia* deportation order can be rescinded upon an alien's motion to reopen at any time "if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of [8 U.S.C. § 1229(a)]."); *In re G-Y-R-*, 23 I. & N. Dec. at 187-88. The service upon an alien by regular mail of a written Notice to Appear creates a rebuttable presumption that the alien in fact received the notice. *Mecaj*, 263 Fed. App'x at 451 (citing *Salta v. INS*, 314 F.3d 1076,

_____

[5] 8 U.S.C. § 1229a(b)(5)(B) provides that "[n]o written notice shall be required under [§ 1229a(b)(5)(A)] if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." 8 U.S.C. § 1229(a)(1)(F)(ii) provides that "the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number."

1079 (9th Cir. 2002)). But the presumption, as Ly points out, is weaker than that applied when notice is served by certified mail.[6] *Id.*

The weaker presumption of receipt accorded to notice sent by regular mail can be rebutted through direct or circumstantial evidence. *See* 8 C.F.R. § 208.2(c)(3) (A motion to rescind an *in absentia* removal order "must include documentary evidence, which demonstrates that . . . [t]he alien did not receive the notice . . . ."); *Mecaj*, 263 Fed. App'x at 451 ("[T]he Board must consider all relevant evidence, including circumstantial evidence, offered to rebut the presumption of receipt."); *Sembiring v. Gonzales*, 499 F.3d 981, 989-90 (9th Cir. 2007) (8 C.F.R. § 208.2(c)(3) "permits but does not require inclusion of an affidavit" as part of the documentary evidence an alien must include in a motion to rescind an *in absentia* removal order to demonstrate failure to receive notice.); *Matter of M-R-A-*, 24 I. & N. Dec. 665 (BIA 2008). In *Matter of M-R-A-*, the BIA listed examples of evidence, both direct and circumstantial, which should be considered when an alien seeks to rebut the weaker presumption of receipt that arises from service by regular mail. 24 I. & N. Dec. 665 (BIA

---

[6] According to the BIA:

We find that it is proper to apply some presumption of receipt to a Notice to Appear or Notice of Hearing sent by regular mail when the notice was properly addressed and mailed according to normal office procedures. This presumption, however, is weaker than that accorded to notice sent by certified mail. Therefore, when a respondent seeks to reopen proceedings based on a claim of lack of receipt of notice, the question to be determined is whether the respondent has presented sufficient evidence to overcome the weaker presumption of delivery attached to notices delivered by regular mail.

*Matter of M-R-A-*, 24 I. & N. Dec. 665 (BIA 2008).

2008).

> An inflexible and rigid application of the presumption of delivery is not appropriate when regular mail is the method of service of a Notice to Appear or Notice of Hearing. In determining whether a respondent has rebutted the weaker presumption of delivery applicable in these circumstances, an Immigration Judge may consider a variety of factors including, but not limited to, the following: (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice. We emphasize that these are just examples of the types of evidence that can support a motion to reopen. Immigration Judges are neither required to deny reopening if exactly such evidence is not provided nor obliged to grant a motion, even if every type of evidence is submitted. *Each case must be evaluated based on its own particular circumstances and evidence.*

*Id.* (emphasis added).

###    C.    Ly Presumptively Received the Notice to Appear

Ly's motion to reopen is devoid of any direct evidence to show that he failed to receive the Notice to Appear. Ly failed to attach an affidavit to his motion to reopen to support his allegation that he never received the Notice to Appear. Moreover, unlike with the two subsequently sent Notices of Hearing, Ly presents absolutely no documentary evidence to suggest that the Notice to Appear was returned to the Immigration Court undelivered.[7] Absent direct evidence, the question

---

[7] The November 27, 2006 and January 10, 2007 hearing notices were returned to the Immigration Court with the notation on the envelopes: "return to sender, attempted - not known, unable to forward."

becomes whether or not the circumstantial evidence in this case is sufficient to overcome the presumption of receipt accorded to notice sent by regular mail. The answer is no.

Ly infers that he failed to receive the Notice to Appear because he moved from 2853 Citizens Place, Apt. E, Columbus, OH 43232 to 2779 Citizens Place, Apt. D, Columbus, OH 43229 before July 27, 2004—the date the Notice was mailed. Nowhere in the record does Ly affirmatively state exactly when he moved. According to Ly's brief, the address to which the Notice to Appear was sent—the old Citizens Place address—was "several years old" when the Notice was mailed on July 27, 2004. Yet it would appear from the fact that Ly attended his asylum interview on March 5, 2004—just months before the Notice to Appear was mailed—that he was still capable of receiving notice at the old Citizens Place address soon before the Notice to Appear was sent. Furthermore, as previously mentioned, the Notice to Appear was not returned undelivered. Finally, regardless of when Ly moved from the old Citizens Place address to the new Citizens Place address, regular mail sent to Ly's old address obviously was sometimes received by Ly at his new address. Ly received the final removal order even though it was sent to his old address in February 2007.

Ly attached to his motion to reopen correspondence from his attorney to the DHS and the Arlington Immigration Court, but this evidence is insufficient, standing alone, to rebut the presumption that Ly received the Notice to Appear. Sometime in 2006, Ly's attorney asked the DHS about the status of Ly's asylum case. In response to that inquiry, the DHS notified Ly's attorney that Ly was "in removal proceedings or your application for asylum was referred to the Immigration Court. This office no longer has jurisdiction over your asylum case. Please contact the Immigration Court having jurisdiction over your case." (J.A. 14.) A handwritten note said "[p]lease contact the

Immigration Court and request that they calendar your client's case." (J.A. 14.) On October 2, 2006, Ly's attorney sent a letter to Joseph Egozcue, Court Administrator, Arlington Immigration Court, 901 N. Stuart St., Suite 1300, Arlington, VA 22203, requesting that Ly's case "be put on the Court's calendar . . . at your earliest convenience." (J.A. 12.) Ly's attorney enclosed a copy of the Status Inquiry Response from the Chicago Asylum Office.

It could be argued that this correspondence is some evidence that Ly never received the Notice to Appear. It could just as easily be inferred from this correspondence, however, that Ly received the Notice to Appear, knew his case was in removal proceedings, and inquired with the asylum office simply to find out the date of his removal hearing. The Notice to Appear did not contain the date and time of Ly's removal hearing. The Notice to Appear was sent to Ly from the Supervisory Asylum Officer in the Chicago Asylum Office, which would explain why Ly's attorney sent the status inquiry to the Chicago Asylum Office. Moreover, given the nature of these types of proceedings, the long time lags, and the occasional communication problems between asylum offices and immigration courts, it would be logical for Ly's attorney to start with the asylum office to inquire about Ly's removal proceedings. Therefore, Ly's correspondence with the DHS and the Immigration Court is at best very weak circumstantial evidence of non-receipt of the Notice to Appear, and is not enough to rebut the presumption that Ly did in fact receive the Notice to Appear.

The Court recognizes that some of the factors from *Matter of M-R-A-* for determining whether or not an alien has successfully rebutted the weak presumption of receipt weigh in Ly's favor. 24 I. & N. Dec. 665 (BIA 2008). Ly filed a "prior affirmative application for relief, indicating that [he] had an incentive to appear." *Id.* Ly not only filed an asylum application, but he appeared

13

at his asylum interview. Furthermore, Ly acted quickly upon learning of the *in absentia* order, and exercised due diligence in seeking to redress the situation. *See id.* His *in absentia* removal hearing was held on February 8, 2007, and he moved to reopen on March 1, 2007. This circumstantial evidence is outweighed, however, by evidence that tends to show that Ly received the Notice to Appear; the Notice to Appear was not returned to the Immigration Court undelivered, Ly apparently received notice of his asylum interview at his old address just a few months before the Notice to Appear was sent, and Ly—as demonstrated through his receipt of the removal order—was receiving regular mail sent to his old Citizens Place address. Given that the circumstantial evidence in this case is insufficient standing alone, without an affidavit or any similar documentary evidence to support his allegations of non-receipt, Ly has failed to rebut the presumption of receipt accorded to the July 27, 2004 Notice to Appear. Therefore, Ly presumptively received the Notice to Appear.

### D.   Ly Was Obligated to Update His Address

Given that Ly presumptively received the July 27, 2004 Notice to Appear, he was informed, as required under 8 U.S.C. § 1229(a)(1)(F)(ii), of his obligation to notify the DHS or the Immigration Court in the event of an address change. The Notice to Appear provided:

> [y]ou must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be sent to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing.

(J.A. 11.) Despite being informed of his obligation to provide a current address, Ly neglected to update the DHS or the Immigration Court with his new Citizens Place address. By failing to update

his address, Ly made himself unreachable by the Immigration Court. Therefore, the court was not required to provide Ly with notice of the date and time of his removal hearing in order to proceed *in absentia*. *See* 8 U.S.C. § 1229a(b)(5)(B); *Mecaj*, 263 Fed. App'x at 451; *In re G-Y-R-*, 23 I. & N. Dec. at 187-88. Because the court was not required to notify Ly of the date and time of his hearing in order to proceed *in absentia*, Ly cannot now rely on his failure to receive the hearing notices as a basis for reopening his removal proceedings. *See* 8 U.S.C. § 1229a(b)(5)(B); *Mecaj*, 263 Fed. App'x at 451; *Dominguez*, 284 F.3d at 1260 ("Failing to provide the INS with a change of address will preclude the alien from claiming that the INS did not provide him or her with notice of a hearing."). The BIA did not abuse its discretion, therefore, by affirming the IJ's decision to deny Ly's motion to reopen.

### E. Other Issues

The two remaining issues in this case are more quickly and easily resolved. Ly argues that the IJ and the BIA erred in relying on the BIA's decision in *Matter of Grijalva* because the strong presumption of receipt accorded to notice sent by certified mail from *Grijalva* should not be applied in this case, where the Notice to Appear was sent by regular mail. 21 I. & N. Dec. 27 (BIA 1995). Contrary to Ly's argument, however, nothing in the IJ's or the BIA's opinions suggests that the presumption of receipt accorded to certified mail was employed in this case. The IJ cited to *Grijalva* simply for the proposition that the burden was Ly's to demonstrate that he failed to receive notice, not for the proposition that Ly was required to overcome the strong presumption of receipt accorded to notice sent by certified mail. Ly refers to a circuit split on the applicability of a weak presumption of receipt that arises when notice is sent by regular mail as opposed to certified mail, and urges this

Court to adopt the weak presumption. The Sixth Circuit in *Mecaj*, as well as the BIA in *Matter of G-Y-R-*, has already adopted the weak presumption of receipt with respect to notice sent by regular mail and, as explained above, we apply that weak presumption today. *See Mecaj*, 263 Fed. App'x at 451; *Matter of M-R-A-*, 24 I. & N. Dec. 665.

Ly also argues that the BIA erred by not following its own precedent in *In re G-Y-R-*, 23 I. & N. Dec. 181 (BIA 2001). The BIA did not err, however, by failing to find that its holding in *In re G-Y-R-* automatically entitled Ly to the relief he sought. In *In re G-Y-R-*, the alien undisputedly failed to receive the notice to appear—it was returned to the Immigration Court undelivered. *Id.* at 182. In this case, the July 27, 2004 Notice to Appear was not returned to the INS or the Immigration Court, and the circumstantial evidence suggests that Ly did in fact receive the Notice.

## IV.    Conclusion

For these reasons, we **DENY** Ly's petition for review.