NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0375n.06

No. 21-3812

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 16, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| LAKHVIR SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | OPINION |

Before: SILER, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Lakhvir Singh, a citizen of India, came to the United States illegally, so immigration officials served him with a notice to appear at removal proceedings. The government later mailed Singh another notice identifying the date of his second hearing. Soon after, however, Singh moved without updating his address. When he failed to show up at this hearing, an immigration judge ordered him removed. Five years later, Singh sought to rescind this order by alleging that he had not received the mailed notice. The immigration judge denied his request, finding either that he had received the notice or that his failure to update his address had been the reason why he did not. The Board of Immigration Appeals affirmed that decision. It also rejected Singh's two other arguments: that the immigration court did not have jurisdiction because his initial "notice to appear" lacked the date and time of his initial hearing; and that the Board should reopen his proceedings on its own initiative. Singh now presents all three arguments to us. We reject the first two on the merits and dismiss the last one on jurisdictional grounds.

I

Singh was born and raised in India. In early 2013, shortly after his eighteenth birthday, he attempted to evade authorities and enter the United States illegally at an Arizona point of entry. Immigration officials detained him.

During an interview with an asylum officer, Singh expressed a fear for his life if he returned to India. He and his father are Sikhs who supported Simranjit Singh Mann's political party after his father left the Akali Dal Badal party. According to Singh, members of his father's former party attacked Singh twice in retaliation for his father's decision to join a rival. The first attack left Singh hospitalized. When he informed the police, officers threatened Singh and ordered him to tell his father to switch parties. After the second attack, Singh opted to flee India. The asylum officer found that Singh had established a credible fear of persecution in his country.

While the government detained Singh in Arizona, an immigration official personally served him with a notice to appear in removal proceedings that would occur before an Arizona immigration court at a date and time "to be set." Admin. R. (A.R.) 109. A few days later, another official personally served Singh with a notice identifying the time and date of an initial hearing as 8:30 a.m. on April 25, 2013. Singh attended this scheduling hearing. Court staff served him with an additional notice setting his removal hearing for June.

A few days later, the government released Singh from custody. He told immigration officials that he planned to live at an apartment in Saginaw, Michigan, upon his release. He also asked the Arizona immigration court to change the venue of his immigration proceedings to Michigan. The court granted this request.

The Michigan immigration court scheduled Singh's next hearing for June 18, 2013. On May 17, court staff served him with a notice of this upcoming hearing by mailing the notice to him

2

at the Michigan address that he had provided. Like the notices that Singh had received in person, this mailed notice warned him that he had a duty to update his address if it had changed and that his failure to appear at the hearing could result in the immigration court ordering his removal in his absence.

Despite these repeated warnings, Singh did not attend his June hearing. The immigration laws directed the court to order his removal "in absentia" as long as the government proved that he was "removable" and that he had been "provided" with the required "written notice[.]" 8 U.S.C. § 1229a(b)(5)(A). The court found these elements met and ordered Singh removed to India. Court staff also mailed this ruling to his Michigan address.

Over five years later, Singh moved to reopen his immigration proceedings based on the claim that he had not received notice of his June 2013 hearing. *See id.* § 1229a(b)(5)(C)(ii). In an affidavit, Singh swore that he had not received the notice mailed to his Michigan address and that he would have appeared if he had known about the hearing. He explained that he had moved to New York from Michigan in "early June of 2013." A.R. 61. Singh noted further that a New York court had granted his petition to appoint a U.S. resident as his guardian just before his twenty-first birthday in 2016. Since then, he had filed an immigration form designed to help him remain in this country based on this family relationship. Singh lastly attached an asylum application to his motion to reopen.

An immigration judge denied Singh's motion. Singh bore the burden to prove that he had not received notice of the hearing and had given his current address to the immigration court. According to the judge, Singh did neither. The judge highlighted that Singh had waited five years before attempting to reopen the proceedings and had failed to provide his New York address. The

judge also pointed out that the notice had been mailed over two weeks before Singh had moved to New York and that it had not been returned as undelivered.

In an appeal to the Board of Immigration Appeals, Singh raised three claims. He argued that the immigration judge wrongly failed to credit his evidence that he had not received notice of the June 2013 hearing. He suggested that the immigration court lacked jurisdiction because his "notice to appear" had not identified the date and time of his proceedings, as required by *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). And he asked the Board to reopen his case on its own initiative because his asylum request had merit.

The Board rejected each claim. It summarily affirmed the immigration judge's conclusion that Singh had failed to prove that he had not received notice of the hearing. The Board also held that Singh's *Pereira*-based jurisdictional argument was "precluded by further case law"—namely, *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). A.R. 3. It lastly denied Singh's request that it reopen his case on its own initiative because he had not first sought this relief with the immigration judge. The Board added that, in any event, Singh had not shown the exceptional circumstances required to justify this type of reopening.

II

A

Singh raises the same three arguments in this court that he raised with the Board. These arguments implicate the immigration laws on three topics: (1) the notice that the government must give to immigrants, (2) the consequences for immigrants who fail to attend their hearings, and (3) the relief that those immigrants may later seek. We thus start by summarizing these laws.

*First*, the immigration laws seek to ensure that immigrants receive proper notice about their removal proceedings. *See* 8 U.S.C. § 1229(a). Paragraphs (1) and (2) of § 1229(a) require the

4

government to provide two different types of notices. *See Valadez-Lara v. Barr*, 963 F.3d 560, 565–66 (6th Cir. 2020). Paragraph (1) sets forth the rules for an initial "notice to appear" that begins the removal process. 8 U.S.C. § 1229(a)(1). A notice to appear must alert an immigrant of many things, including the "nature of the proceedings," the "time and place at which the proceedings will be held," and the "consequences" for failing to show up. *Id.* § 1229(a)(1)(A), (G)(i)–(ii). Paragraph (2) sets forth the rules for subsequent notices when there has been "any change or postponement in the time and place of" the removal proceedings. *Id.* § 1229(a)(2). This notice only needs to list the "new time or place of the proceedings" and the "consequences" if the immigrant fails to attend. *Id.* § 1229(a)(2)(A).

The government must serve these different notices in the same way. It must give the notices to an immigrant "in person" when "practicable[.]" *Id.* § 1229(a)(1), (2)(A). When "personal service is not practicable," though, the government may serve the notices "by mail[.]" *Id.* Yet it could not serve an immigrant in person or by mail if it did not know where the immigrant lived. So immigrants must "provide" a "written record of an address" at which they may be "contacted" about their proceedings. *Id.* § 1229(a)(1)(F)(i). They also must "immediately" "provide" a "written record of any change" of address. *Id.* § 1229(a)(1)(F)(ii). To ensure that immigrants know of these address requirements, the notice to appear must include information about the requirements. *Id.* § 1229(a)(1)(F)(i)–(ii).

*Second*, given these notice protections, Congress expected immigrants to attend their removal proceedings and imposed severe consequences on those who do not. An immigration judge must order an immigrant's removal "in absentia" if the government shows both that the immigrant is "removable" and that the government provided the required "written notice":

> Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record,

5

does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)).

*Id.* § 1229a(b)(5)(A). If the government has sent the notice to "the most recent address" that the immigrant "provided under section 1229(a)(1)(F)," an immigration judge should treat that "written notice" as "sufficient[.]" *Id.* And if an immigrant "has failed to provide the address required under section 1229(a)(1)(F)," an immigration judge must order the immigrant removed even without the "written notice" that the laws otherwise require. *Id.* § 1229a(b)(5)(B).

*Third*, Congress allowed immigrants to file a "motion to reopen" to rescind an in absentia removal order only in limited situations. As relevant here, immigrants can seek to rescind such an order by "demonstrat[ing] that [they] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)[.]" *Id.* § 1229a(b)(5)(C)(ii). This text makes clear that, while the government bears the burden of proof at a removal hearing, the burden switches to the immigrant at the motion-to-reopen stage. *See Santos-Santos v. Barr*, 917 F.3d 486, 491 (6th Cir. 2019).

Consistent with the statute's treatment of "[s]ervice by mail" as "sufficient if there is proof of attempted delivery to the last address provided by" the immigrant, 8 U.S.C. § 1229(c), the Board presumes that an immigrant has received a notice when the government has mailed it to the immigrant's last known address. *See Matter of M-R-A-*, 24 I. & N. Dec. 665, 671–73 (B.I.A. 2008). The strength of this presumption of receipt depends on the method of mailing: a weaker presumption applies if the government uses regular mail rather than certified mail. *Id.* When deciding whether an immigrant has overcome the presumption, the Board considers all relevant evidence. *See id.* at 673–74. Common types of direct evidence include affidavits from immigrants or their relatives swearing that they did not receive the notice and offering potential reasons why it did not reach them. *See id.* Common types of circumstantial evidence include proof that an

immigrant has acted diligently in seeking to overturn the removal order and that the immigrant had an incentive to appear at the hearing (because, for example, the immigrant had a strong asylum application pending). *See id.*; *see also Thompson v. Lynch*, 788 F.3d 638, 643 (6th Cir. 2015).

B

1

Singh first challenges the immigration judge's conclusion (which the Board summarily adopted) that Singh's purported failure to receive the mailed notice of his June 2013 hearing offered no grounds for reopening his immigration proceedings. We review the denial of Singh's motion to reopen for an abuse of discretion. *See Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010). Since the denial rested on the immigration judge's resolution of a pure fact question (whether Singh received the notice), we also must treat the "administrative finding[] of fact" on that question as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Valadez-Lara*, 963 F.3d at 568.

Although the immigration judge's opinion is not a model of "clarity," we can "reasonably" "discern[]" two alternative "path[s]" that the judge took to deny relief. *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (citation omitted). The judge found both that Singh received the mailed notice and that, if he did not, his own failure to update his mailing address was the cause. Because a "reasonable factfinder" could conclude that the record contains enough evidence for both findings, our standard of review requires us to reject Singh's challenge. *Id.* at 1677.

Reason One: Sufficient evidence supports the judge's finding that Singh actually received the notice. The judge could presume Singh's receipt because court staff mailed the notice to the Michigan address that he last provided. *See Valadez-Lara*, 963 F.3d at 566. Since staff mailed the notice on May 17, 2013, the judge could also reasonably find that it would have reached

Singh's apartment well before he says he moved to New York in "early June of 2013." A.R. 61, 104. And no evidence exists that the post office returned this mail as undeliverable. A.R. 43; *see Santos-Santos*, 917 F.3d at 493; *Ly v. Holder*, 327 F. App'x 616, 622–23 (6th Cir. 2009).

Circumstantial evidence bolsters the judge's finding. Immigration officials personally served Singh with other documents, including his notice to appear. According to this notice, Singh received "oral notice" in his native language of the "consequences" of failing to appear at a hearing. A.R. 110. The notice to appear also told him that the government would mail notices of his hearings to the address that he had provided, and it highlighted the importance of keeping this address current. And the government personally served Singh with notice of a second hearing (in Arizona) before the change of venue to Michigan. So Singh knew that he would have another hearing and that he would receive the date in the mail. Despite this knowledge, Singh waited five years to attempt to overturn the removal order. His failure to make any effort to keep apprised of his removal proceedings cuts against his current claim that he did not attend because of his lack of notice (rather than because of his choice to simply ignore the proceedings). *Cf. Valadez-Lara*, 963 F.3d at 564, 569.

Reason Two: Sufficient evidence likewise supports the immigration judge's alternative finding that Singh did not receive the notice sent to his Michigan address because he had moved to New York without informing the immigration court of his address change. Indeed, Singh's own affidavit provided no factual ground that might explain his failure to receive this mailed notice other than his move to New York. *See* A.R. 61. And he does not claim to have informed the immigration court of his New York address until years later. *See* A.R. 78. At oral argument, his counsel even conceded that he had "flagrantly failed in his obligation" to keep the immigration court informed of his address. Oral Arg. 5:24–30.

8

The immigration laws allowed the judge to deny relief on this alternative ground. To rescind the removal order, Singh needed to prove more than that he did "not receive notice"; he needed to prove that he did not receive "notice in accordance with paragraph (1) or (2) of section 1229(a)"—the provisions setting forth the requirements for a notice to appear and later notices. 8 U.S.C. § 1229a(b)(5)(C)(ii). Section 1229(a)(1), in turn, makes clear that an immigrant must update the immigration court with any change of address, and that the notice to appear must warn of the "consequences under section 1229a(b)(5)" of failing to do so. *Id.* § 1229(a)(1)(F)(ii)–(iii). Section 1229a(b)(5) then relieves the government of the burden to give "written notice" if the immigrant "has failed to provide the address required under section 1229(a)(1)(F)[.]" *Id.* § 1229a(b)(5)(B). Section 1229(a)(2) likewise relieves the government of the burden to provide a "written notice" of rescheduled hearings for the same reason. *Id.* § 1229(a)(2)(B). Even if an immigrant does not receive notice, therefore, courts have held that the immigrant has received notice *in accordance with* § 1229(a)(1) or (2) whenever a lack of receipt results from the failure to inform the immigration court of the proper address. *See Xinquan Zhong v. Sessions*, 744 F. App'x 921, 924–25 (6th Cir. 2018); *Gomez-Palacios v. Holder*, 560 F.3d 354, 360–61 (5th Cir. 2009); *Maghradze v. Gonzales*, 462 F.3d 150, 154 (2d Cir. 2006); *cf. Sanchez v. Holder*, 627 F.3d 226, 233–34 (6th Cir. 2010).

Singh's responses lack merit. As a factual matter, he cites three pieces of evidence that support his claim that he did not receive the notice of his June 2013 hearing. Under our deferential standard of review, however, we may not simply reweigh the evidence and reach our own conclusion. *See Valadez-Lara*, 963 F.3d at 567, 569. Rather, we must accept the "administrative" finding that Singh received the notice, or that his failure to update his address led him not to receive

it, as long as a "reasonable adjudicator" could have made the finding. 8 U.S.C. § 1252(b)(4)(B). And Singh points to nothing that would *compel* a reasonable adjudicator to agree with him.

Singh's affidavit is his first piece of evidence. He swore: "I never received any notice from the Court regarding any hearing date." A.R. 61. But this type of conclusory denial is "weak" support for an immigrant's claim of nonreceipt. *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004). Most mail reaches its destination, so immigrants generally should attempt to explain why their notices might have fallen through the cracks (because, for example, a postal employee regularly confused one address for another). *See id.*; *cf. Valadez-Lara*, 963 F.3d at 563. Indeed, we have already suggested that an immigrant generally cannot rebut the presumption of receipt merely by testifying, "I never received any notice of the hearing." *Ba v. Holder*, 561 F.3d 604, 607 (6th Cir. 2009). And we have upheld Board decisions that rejected an immigrant's conclusory denial of receipt. *See Aguilar v. Garland*, 861 F. App'x 45, 50 (6th Cir. 2021) (citing cases). Here, moreover, Singh's affidavit provided only a legally invalid reason why his notice might not have reached him—because he had moved without updating his address.

Singh next turns to circumstantial evidence. Even though he waited over five years from the *date of the removal order* before seeking to rescind it, he claims that he acted diligently because he moved to reopen soon after the *date he learned of this order*. *See Thompson*, 788 F.3d at 643. But Singh identifies no evidence showing when he first discovered the removal order—a fact necessary to decide whether he promptly attempted to rescind it from that point. Singh bore the burden of proof at this stage, *see Santos-Santos*, 917 F.3d at 491, so he cannot rely on this evidentiary gap to support his diligence claim. In addition, the Board considers "all relevant evidence" when deciding whether an immigrant received a notice. *See M-R-A-*, 24 I. & N. Dec. at 674. The five-year delay between the removal order and Singh's motion to reopen—a delay in

which he sent no correspondence asking about the status of his case—undermines his claim that the reason he did not attend was the lack of notice. *See Ly*, 327 F. App'x at 623; *cf. Navarrete-Lopez v. Barr*, 919 F.3d 951, 954 n.5 (5th Cir. 2019).

As for his last piece of evidence, Singh alleges that he had an incentive to appear at his removal hearing both because he had a pending asylum application and because he had previously filed paperwork to remain in the United States based on his relationship with his court-appointed guardian. But he submitted this application and paperwork long after his removal hearing, so these materials could not have given him an incentive to appear at the relevant time. To be sure, before his hearing, an asylum officer had found that he had a credible fear of persecution in India, which is some evidence showing an incentive to appear at that time. Given all of the evidence that cuts against Singh, though, this fact and his conclusory affidavit did not "compel[]" the immigration judge to find that he did not receive notice of the hearing. 8 U.S.C. § 1252(b)(4)(B). Singh's factual arguments thus collectively provide no basis to overturn the judge's finding.

Switching to legal arguments, Singh suggests that the immigration judge wrongly failed to tick through all of the factors that the Board articulated in *M-R-A-* to decide whether he had received notice of a hearing. Yet we have already rejected the argument that the Board must treat these factors as a "mandatory checklist" in every case. *Stewart v. Holder*, 362 F. App'x 518, 522–23 (6th Cir. 2010). In this case, moreover, the immigration judge properly identified the governing law with a citation to on-point authority: The judge explained that a court should consider relevant evidence (including an immigrant's affidavit and other circumstantial factors) to resolve this factual question. A.R. 42 (citing *Ba*, 561 F.3d at 607–08; *Matter of C-R-C-*, 24 I. & N. Dec. 677, 679–80 (B.I.A. 2008)). Lastly, our caselaw did not require the judge to expressly discredit Singh's conclusory affidavit or discuss his other circumstantial evidence as long as we can deduce the basis

11

for the judge's finding. *See Dieng v. Barr*, 947 F.3d 956, 961 (6th Cir. 2020); *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008).

Singh ends with a legal challenge to the Board's separate decision. He argues that the Board violated due process because it summarily adopted the immigration judge's finding. We have repeatedly rejected this type of challenge to a Board order that affirms an immigration judge's decision on a specific issue without providing independent reasoning. *See Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005); *Vushaj v. Mukasey*, 289 F. App'x 838, 843 (6th Cir. 2008). Not only that, we have rejected due-process arguments even when, unlike in this case, the Board exercises its authority to issue no decision at all. *See Denko v. I.N.S.*, 351 F.3d 717, 722, 730 (6th Cir. 2003). The Constitution does not require the Board to spend its limited time and resources putting the immigration judge's reasoning into its own words.

2

Singh next renews his legal challenge to the validity of his initial "notice to appear"—a statutory-interpretation question that we review de novo. *See Sanchez-Gonzalez v. Garland*, 4 F.4th 411, 413 (6th Cir. 2021). Singh's notice to appear stated "to be set" on the lines reserved for the date and time of his removal hearing. A.R. 109. According to Singh, the absence of this information violated the requirements for these notices in 8 U.S.C. § 1229(a)(1).

His argument rests on a pair of recent Supreme Court decisions—*Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). We thus begin with some background about those cases. The immigration laws authorize the Attorney General to "cancel" the removal of certain immigrants who have been in the United States for a continuous period of ten years. 8 U.S.C. § 1229b(b)(1)(A). Yet this continuous period can be cut short if the government serves an immigrant with "a notice to appear under section 1229(a)"—meaning that

the immigrant must have been in this country for ten years by that point to qualify for cancellation of removal. *Id.* § 1229b(d)(1)(A). The government often tried to trigger this "stop-time rule" by serving immigrants with a notice to appear that failed to specify the date and time of their hearings. *Pereira*, 138 S. Ct. at 2109, 2111. The Supreme Court rejected this approach. It explained that § 1229(a)(1)(G)(i)'s text required a "notice to appear" to contain the time and place of the hearing. *Id.* at 2114. Because the cancellation-of-removal statute triggered the stop-time rule only if an immigrant received a "notice to appear under section 1229(a)," the Court reasoned that a notice that lacked the required time or place did not suffice to do so. *Id.* at 2114–16.

In response to *Pereira*, we and other courts held that the government could still trigger the stop-time rule by sending immigrants all required information in two *separate* documents. *See Valadez-Lara*, 963 F.3d at 565; *Yanez-Pena v. Barr*, 952 F.3d 239, 241 (5th Cir. 2020). That is where *Niz-Chavez* comes in. In that case, the Court clarified that the government can trigger the cancellation-of-removal statute's stop-time rule only by putting all of the details that § 1229(a)(1) requires in a single "notice to appear" document. *Niz-Chavez*, 141 S. Ct. at 1479, 1486.

Unlike the immigrants in *Pereira* and *Niz-Chavez*, however, Singh did not seek cancellation of removal. His case thus does not implicate the cancellation-of-removal statute's stop-time rule. Singh instead argues that the immigration court lacked jurisdiction over his removal proceedings because his notice to appear did not include the date and time required by § 1229(a)(1)(G)(i). At oral argument, he alternatively suggested that the motion-to-reopen provision for rescinding "in absentia" removal orders (§ 1229a(b)(5)(C)(ii)) allowed him to rescind his order on this ground. Yet our precedent forecloses Singh's jurisdictional argument. And while his motion-to-reopen argument has engendered a circuit split, Singh has forfeited that argument by failing to timely raise it.

13

*Jurisdictional Argument*.  Precedent allows us to quickly dispatch Singh's jurisdictional argument.  After *Pereira*, many immigrants in Singh's situation have argued that the immigration court lacked "jurisdiction" to issue removal orders because the government did not validly start their removal proceedings with a notice to appear that included the date and time of those proceedings.  Yet the circuit courts (including our own) have uniformly rejected these post-*Pereira* "jurisdictional" arguments, which effectively equated an administrative agency with an Article III court.  *See Tomas-Morales v. Garland*, 2022 WL 154343, at *3 (6th Cir. Jan. 18, 2022) (citing cases); *cf. Mendoza-Jovel v. Garland*, 860 F. App'x 389, 392 n.4 (6th Cir. 2021).

Admittedly, Singh has a point that the Board's reasoning on this issue is puzzling.  It noted that *Niz-Chavez* "precluded" Singh's claim, A.R. 3, but *Niz-Chavez* said nothing about jurisdiction.  Even after *Niz-Chavez*, however, the circuit courts (again including our own) have continued to uniformly reject jurisdictional arguments like Singh's.  *See Tomas-Morales*, 2022 WL 154343, at *3 (citing cases); *see also United States v. Bastide-Hernandez*, 39 F.4th 1187, 1191–94 (9th Cir. 2022); *Arreola-Ochoa v. Garland*, 34 F.4th 603, 607 (7th Cir. 2022).  As we have explained, neither statutory nor regulatory text treats as "jurisdictional" the date and time information that § 1229(a)(1) requires a notice to appear to contain.  *See Tomas-Morales*, 2022 WL 154343, at *3; *see also Ramos Rafael v. Garland*, 15 F.4th 797, 801 (6th Cir. 2021).

*Motion-to-Reopen Argument*.  In response to questioning at oral argument, Singh also asserted that his defective notice to appear provided a statutory basis to rescind his in absentia removal order.  *See* 8 U.S.C. § 1229a(b)(5)(C)(ii).  As noted, § 1229a(b)(5)(C)(ii) states that this type of removal order "may be rescinded" if Singh "did not receive notice *in accordance with paragraph (1)* or (2) of section 1229(a)[.]"  *Id.* (emphasis added).  Singh claimed at argument that

he did not receive a notice "in accordance with" § 1229(a)(1) because his notice to appear did not specify the date and time of his removal proceedings.

This argument raises a question that has split the circuit courts and Board. After *Niz-Chavez*, the Ninth Circuit has read the text to require immigrants to receive a valid notice under § 1229(a)(1)—whether or not they received a valid notice under § 1229(a)(2). According to this view, immigrants like Singh may rescind a removal order even if they were sent a later notice identifying the new date and time of a hearing as long as their initial notice to appear did not include this information. *See Singh v. Garland*, 24 F.4th 1315, 1317–20 (9th Cir. 2022); *cf. Rodriguez v. Garland*, 15 F.4th 351, 354–55 (5th Cir. 2021); *Rodriguez v. Garland*, 31 F.4th 935, 935–37 (5th Cir. 2022) (Duncan, J., concurring in denial of en banc rehearing). But the Board has maintained that it does not need to rescind a removal order if the government has provided the time and place of the hearing in *either* a notice to appear (under § 1229(a)(1)) *or* any later notice (under § 1229(a)(2)). *Matter of Laparra-Deleon*, 28 I. & N. Dec. 425, 432 (B.I.A. 2022); *see Rodriguez*, 31 F.4th at 941–44 (Elrod, J., dissenting from denial of en banc rehearing). The Eleventh Circuit, too, recently held that immigrants may seek rescission only if they do not receive the applicable type of notice for the specific hearing at which they were removed. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316–20 (11th Cir. 2022). According to this view, immigrants like Singh who received proper notice of a change in the time or place of their removal proceedings under § 1229(a)(2) may not rescind a removal order—even if they initially received an invalid notice to appear under § 1229(a)(1). *See id.*

We have yet to take a binding position on the matter. Before *Niz-Chavez*, we had suggested that immigrants could not rescind a removal order under § 1229a(b)(5)(C)(ii) unless they proved lack of notice under both paragraphs (1) and (2). *Santos-Santos*, 917 F.3d at 492. But *Santos-*

*Santos* ultimately did not need to resolve the question under our then-existing precedent. *See Valadez-Lara*, 963 F.3d at 567. And this view may create due-process questions. Under such a regime, if the government sent an immigrant a valid notice to appear under § 1229(a)(1) but failed to send a change-of-hearing notice under § 1229(a)(2), immigrants could not seek rescission of an in absentia removal order even if they missed a rescheduled hearing without notice or knowledge of the hearing's existence. *See Dacostagomez-Aguilar*, 40 F.4th at 1317–18.

Yet we need not decide this statutory question today because Singh has raised it too late by asserting it for the first time in response to oral-argument questioning. Parties in our court forfeit their legal arguments if they do not raise them in their opening briefs. *See, e.g.*, *Ramos Rafael*, 15 F.4th at 800; *Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016). And Singh's opening brief did not seek rescission of his removal order under § 1229a(b)(5)(C)(ii) on the ground that his notice to appear was invalid under *Pereira* and *Niz-Chavez*. Rather, Singh argued that the Board should have "terminated" his removal proceedings because the immigration court lacked "jurisdiction" over them. Pet'r Br. 17. The "termination" of Singh's proceedings for lack of jurisdiction and the "rescission" of a removal order for lack of proper notice constitute distinct remedies that flow from different legal texts. *See Laparra-Deleon*, 28 I. & N. Dec. at 430.

Singh also had good reason to limit his appeal to the jurisdictional claim. He did not raise any rescission argument with the Board, and we refuse to consider issues that were not properly exhausted in that administrative body. *See Khalili v. Holder*, 557 F.3d 429, 432–33 (6th Cir. 2009). Before the Board, Singh argued only that the immigration court lacked jurisdiction under *Pereira*. A.R. 19–20. And we recently held that a similar jurisdictional argument before the Board did not suffice to exhaust a rescission argument under § 1229a(b)(5)(C)(ii). *See Njai v. Garland*, 2022

WL 2903443, at *3–4 (6th Cir. July 22, 2022). So Singh's claim likely would have been doomed for lack of exhaustion even if he had properly raised it in our court.

To be sure, Singh's opening brief block quoted portions of the Fifth Circuit's *Rodriguez* decision, which did consider the statutory rescission issue. Pet'r Br. 15–17. But Singh did so only to support his jurisdictional claim "by analogy." *Id.* at 17. In its response brief, therefore, the government asserted that Singh did not make the rescission argument and had thus "abandoned" it. Resp't Br. 19 n.2. Singh did not bother to file a reply brief disputing the government's forfeiture charge. In short, because Singh's opening brief failed to request rescission of the removal order based on his defective notice to appear, he has forfeited this argument in our court.

3

Singh lastly renews his claim that the Board wrongly refused to reopen his proceedings on its own initiative. At the time of Singh's appeal to the Board, immigration judges and the Board both had broad power to reopen cases on their own initiative. *See* 8 C.F.R. § 1003.23(b)(1) (2020) (immigration judges); *id.* § 1003.2(a) (Board). (The government has since amended the regulations to limit this sua sponte power. *See* 85 Fed. Reg. 81,588, 81,591 (Dec. 16, 2020) (codified at 8 C.F.R. §§ 1003.2(a), 1003.23(b)(1)).) Under the old regulations, the Board had "unfettered discretion" to decline a request that it reopen a case in this way. *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (citation omitted). We have held that we generally lack jurisdiction to review this refusal because we would have no legal standard against which to measure whether a particular exercise of discretion was abusive. *See id.*; *Cuevas-Nuno v. Barr*, 969 F.3d 331, 335 (6th Cir. 2020). Under this view, we would lack jurisdiction to review the Board's decision not to reopen Singh's case on its own initiative.

But things are not so simple. Many courts have held that they have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review the Board's resolution of any legal issues embedded in a discretionary decision to refuse to reopen a case sua sponte. *See Thompson v. Barr*, 959 F.3d 476, 483 (1st Cir. 2020) (citing cases). It is debatable whether we have left any room for this jurisdictional carveout. *See id.* at 483 n.3; *compare Hermiz v. Garland*, 848 F. App'x 184, 187 (6th Cir. 2021), *with Rais v. Holder*, 768 F.3d 453, 459–64 (6th Cir. 2014).

We need not resolve this question today because Singh has not shown that the Board committed a legal error when refusing to reopen his case on its own initiative. *Cf. Hermiz*, 848 F. App'x at 187. He initially argues that the Board misread its own regulation by suggesting that he needed to raise his request to reopen with the immigration judge before bringing it to the Board. Yet he himself misreads his request to the Board. In his brief before that entity, Singh asked for relief from the "court" under the regulation that allows an *immigration judge* to reopen a case sua sponte (8 C.F.R. § 1003.23(b)(1) (2020)), not the regulation that allows the *Board* to do so (8 C.F.R. § 1003.2(a) (2020)). A.R. 19. So the Board correctly noted that he had filed for relief under the wrong provision with the wrong body. A.R. 3. Singh now says that the Board should have treated this request as a motion to remand under 8 C.F.R. § 1003.2(c)(4) (2020). But this paragraph allows the Board to treat a *party*'s motion to reopen an immigration judge's decision as a motion to remand; it says nothing about a sua sponte motion. Besides, the text of § 1003.2(c)(4) left the Board with discretion either to construe Singh's motion as a motion to remand *or* to address his arguments immediately. And in any event, the Board gave Singh the benefit of the doubt by alternatively holding that it would have denied relief even if he had filed for it under the correct regulation. A.R. 4.

This fact leaves Singh with the argument that the Board committed legal error when rejecting his reasons for why it should sua sponte reopen his case. Repackaging his jurisdictional claim, he asserts that the Board's decision not to reopen his case rested on a misreading of *Niz-Chavez*. This argument has two problems. For one, the Board's reading of *Niz-Chavez* had nothing to do with its denial of his request that it reopen his case. He requested this relief on the distinct ground that his asylum claim had merit, A.R. 19, and the Board rejected it because he could not meet its stringent test for this "extraordinary relief," A.R. 4. For another, Singh's jurisdictional argument (whether based on *Pereira* or on *Niz-Chavez*) conflicts with binding precedent, as we have explained. *See Ramos Rafael*, 15 F.4th at 801.

In sum, the Board did not commit a legal error when denying Singh's request for sua sponte reopening, so we need not decide whether we would have jurisdiction to correct such an error. And because we otherwise lack jurisdiction to review the Board's denial of Singh's request, we dismiss this part of his petition for review.

* * *

We deny in part and dismiss in part Singh's petition for review.